## Webb, Appellant, v. Zern.

Argued November 12, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harris C. Arnold, Jr.,* with him *Arnold, Bricker, Beyer & Barnes,* for appellant.

*John I. Hartman, Jr.,* with him *W. Hensel Brown, John J. Stork,* and *Windolph, Burkholder & Hartman,* and *Brown & Zimmerman,* and *May, Grove & Stork,* for appellees.

OPINION BY MR. JUSTICE COHEN, June 24, 1966:

This appeal is from the dismissal of a suit in trespass seeking damages for injuries resulting from the explosion of a beer keg purchased by the plaintiff's father.

Charles Webb purchased a quarter-keg of beer from a distributor, John Zern. That same day, plaintiff's brother tapped the keg and about a gallon of beer was drawn from it. Later that evening, when plaintiff entered the room in which the keg had been placed, the keg exploded, severely injuring plaintiff.

Suit was brought against the distributor, the brewer who had filled the keg, and the manufacturer of the keg. Plaintiff, although there were three parties as defendants, relied on the theory of exclusive control, because he averred in his complaint that he had no knowledge of the cause of the explosion, or of which party defendant was responsible for the explosion. The trial court, pursuant to defendants' demurrers and motions for a more specific complaint, sustained the demurrers and dismissed the complaint on the theory that the doctrine was inapplicable since plaintiff had failed to join as defendants his father who had purchased and his brother who had tapped the keg and who might have engaged in activities that caused the explosion. The trial court stated that, for the doctrine of exclusive control to apply, all parties against whom an inference of negligence may be drawn must be joined. Since the statute of limitations had run so that no further defendants could be added, the lower court entered its judgment.

We need not, however, determine whether or not the lower court erred with regard to the law of exclusive control, for there is another and clearer issue which is determinative of this appeal. That issue is the nature and scope of the liability in trespass of one who produces or markets a defective product for use

or consumption. The development of the law in that area is chronicled in the concurring and dissenting opinions of Justices JONES and ROBERTS to the decision of this Court in *Miller v. Preitz,* 422 Pa. 383, 221 A. 2d 320 (1966). One will also find there citations to modern case law and commentaries which extend and recommend the extension of the law of strict liability in tort for defective products. The new Restatement of Torts reflects this modern attitude. Section 402A thereof states:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement 2d, Torts, §402A (1965).

We hereby adopt the foregoing language as the law of Pennsylvania.

The plaintiff in this litigation, therefore, must be given an opportunity to plead and prove his case. Since the plaintiff has broadly pleaded those facts necessary to a cause of action for defective products liability and since we are today adopting a new basis of liability, plaintiff will be permitted to amend his complaint to explicitly state a cause of action in trespass for defective products liability.

Judgment vacated and record remanded with instructions to enter an order permitting plaintiff to file an amended complaint.

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I am in complete accord with the court's action in adopting, as the law of Pennsylvania in tort actions involving products liability, §402A of the new Restatement of Torts. However, I would specifically restrict its application to those instances wherein physical harm to a user, or ultimate consumer, or to such individual's property is concerned. In cases involving "economic loss", I believe the warranty provisions of the sales law, as set forth in the Uniform Commercial Code, present more appropriate standards. Further, in this class of cases wherein §402A is applied, I would specifically rule that contributory negligence or assumption of risk may be a complete defense to the action.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I very emphatically dissent.

If such a drastic change in the field of tort *liability without fault* is to be made in our law—even the majority admit that "we are today adopting a new basis of liability"—it is difficult to imagine a more unlawyerlike judicial Opinion than the majority Opinion. The majority Opinion overrules a long established as well as recently reiterated law (1) *without even mentioning or referring to the numerous decisions of this Court which they are now overruling,** and (2) after the statute of limitations has run as to several persons who can be liable and therefore are necessary parties-defendant under this new rule, and (3) on facts which disclose that even under this newly adopted rule there

---

* Some outstanding examples are: *Johnston v. Dick,* 401 Pa. 637, 165 A. 2d 634; *Saganowich v. Hachikian,* 348 Pa. 313, 35 A. 2d 343; *Coralnick v. Abbotts Dairies, Inc.,* 337 Pa. 344, 11 A. 2d 143; *Ebbert v. Philadelphia Electric Co.,* 330 Pa. 257, 198 Atl. 323; *Sweeney v. Blue Anchor Beverage Co.,* 325 Pa. 216, 189 Atl. 331; *West v. Emanuel,* 198 Pa. 180, 47 Atl. 965.

is no liability on the named defendants in view of the opening by a third party of the exploding keg which caused plaintiff's injuries, and (4) on a legal theory or doctrine which plaintiff never pleaded or conceived of.

The new rule adopted by the majority so completely changes, not by legislative action but by judicial ukase, the law with respect to trespass actions for injuries resulting from noninherently dangerous products that are either manufactured or bottled or sold by any vendor—even a retail druggist—that in my opinion it is not only very unfair but absolutely *unjustifiable* in Justice or in Law.

In the last few years, the Supreme Court of Pennsylvania has radically changed the law in 30 different branches or fields which, prior thereto, had been firmly established.* They have done this either by ex-

---

* Some outstanding examples will demonstrate this fact which is realized by so few. In *Westbury Realty Corporation v. Lancaster Shopping Center, Inc.*, 396 Pa. 383, 387, 389, 152 A. 2d 669, the Court said: "this situation requires a new approach" and thereby by implication overruled more than 20 prior decisions. In *Smith v. Bell Telephone Company*, 397 Pa. 134, 153 A. 2d 477, a new rule as to the sufficiency of circumstantial evidence was established which *expressly* overruled at least 18 recent decisions of this Court. In *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A. 2d 193, the Court overruled numerous decisions of this Court which had established the principle or doctrine of charitable immunity, several of them very recently, in spite of the fact that the doctrine had been iterated and reiterated by the Supreme Court for nearly three-quarters of a century, and in spite of the further fact that in nearly every session of the Legislature in 70 years, attempts had been made to abolish or change charitable immunity but the Legislature had always refused to make any change or modification thereof. In *Olin Mathieson v. White Cross Stores, Inc.*, 414 Pa. 95, 199 A. 2d 266, the Court declared the Pennsylvania Fair Trade Act, as applied to nonsigners of a price maintenance contract, unconstitutional, expressly overruling a very recent decision of this Court, and by clear and necessary implication six other recent decisions of this Court. In *Catherwood Trust*, 405 Pa. 61, 173 A. 2d

430

pressly overruling our prior decisions, or sometimes by evasion and necessary implication.

Today, no one knows from month to month or whenever the Supreme Court of Pennsylvania or the Supreme Court of the United States meets, what the law will be tomorrow—or, by retrospectivity, what the Court will now say it always should have been—or what anyone's rights, privileges, liabilities and duties are. The net result is uncertainty, confusion, dismay, and constantly diminishing respect for Law and for our Courts—and, of course, is one of the major causes of the constantly and rapidly increasing litigation which is literally swamping our Courts.

In a Constitutional form of government such as ours,. which is based upon Law and Order, *certainty and stability are essential.* Unless the Courts establish and maintain *certainty and stability* in the Law, (1) public officials will not know from week to week or from month to month the powers and limitations of

---

86, the Court expressly overruled three recent decisions of this Court, and by necessary implication four additional *recent* decisions of this Court which, in turn, had iterated and reiterated what had been the rule of apportionment in Pennsylvania for over 100 years, and declared constitutional what the Supreme Court had repeatedly declared was unconstitutional.

In. *Commonwealth v. Redline,* 391 Pa. 486, 137 A. 2d 472, the Court expressly overruled a very recent decision of this Court and by necessary implication three additional recent decisions of this Court, as well as repudiating all the basic reasons and fundamental principles upon which this Court's prior felony murder decisions had been predicated.

In *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 116, 141 A. 2d 606, the Court changed the law and numerous decisions by stating that general welfare alone, unconnected with health, safety or morals, was a justifiable basis for zoning. In *Commonwealth ex rel. Johnson v. Myers,* 402 Pa. 451, 167 A. 2d 295, the Court by dictum changed the presumption in felonious murder which had existed from the time of Coke and Bláckstone, and had been reiterated myriad times by this Court in prior decisions.

Government, (2) Government cannot adequately protect law-abiding citizens or peaceful communities against criminals, (3) private citizens will not know their rights and obligations, (4) the meaning of wills, bonds, contracts, deeds, leases and other written agreements will fluctuate and change with each change in the personnel of a Court or their individual ideas of what the writing should and would have said if the present situation had been visualized in the light of today's conditions, (5) property interests will be jeopardized and frequently changed or lost, (6) businessmen cannot safely and wisely make agreements with each other or with their employees.

The basic need for certainty and stability in the law has been recognized for centuries by English-speaking peoples. Lord COKE, Chief Justice of England, thus wisely expressed (circa 1600) these truths: "The knowne certaintie of the law is the safetie of all." Until very recently, this has been a beacon light for Anglo-American Courts, for text authorities, and for law-abiding Americans ever since the foundation of our Country. In the realm of the Law it is usually expressed in the principle known as Stare Decisis. Stare Decisis is one of the bedrocks upon which the House of Law has been built and maintained.*

---

* Stare Decisis does not require the law to be immutable like the law of the Medes and Persians. The law can always be changed by the Legislature (or, when necessary, by a Constitutional amendment) and there are four exceptional situations in which it can be changed without violating the principle of Stare Decisis. The four exceptions via judicial decisions which are part and parcel of Stare Decisis, and which enable the law to progress with modernity and Justice for all, are set forth in the dissenting Opinions in *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A. 2d 193, and in the concurring Opinion in *Michael v. Hahnemann Medical College and Hospital of Philadelphia*, 404 Pa. 424, 428, 172 A. 2d 769; see also dissenting Opinions in *Olin Mathieson v. White Cross Stores, Inc.*, 414 Pa. 95, 199 A. 2d 266; *Commonwealth v. Wood-*

If such a radical change in the Law is to be made—as is now made in the majority Opinion—it should be made and must be made only by the Legislature. It appears to be completely forgotten that we are not a super or Supreme Legislature* or indeed a Legislature at all, desirable as that sometimes would be; or, as Mr. Justice FRANKFURTER pointedly reminded the Supreme Court of the United States in his concurring Opinion in *Green v. United States,* 356 U.S. 165, "Decision-making is not a mechanical process, but neither is this Court an originating lawmaker. The admonition of Mr. Justice BRANDEIS that we are not a third branch of the Legislature should never be disregarded." (page 193)

Too many appellate Judges envision themselves, not as interpreters of the Constitution and the laws, which is the role and province assigned and limited to them by the Constitution, but as possessing the right, the power and the duty to change and, if necessary, rewrite the Constitution and any and every Law, in order to bring it in accord with what they believe is or will be best for the social, political or economic interests of our State or Country.

I can never approve or condone such a Judge-made revolutionary and unfair rule as the majority promulgate.

I very vigorously dissent.

---

house, 401 Pa. 242, 164 A. 2d 98; *McDowell v. Oyer,* 21 Pa. 417, 423; and Mr. Justice OWEN J. ROBERTS' dissenting Opinion in *Smith v. Allwright,* 321 U.S. 649, 669. The present case does not fall within miles of any of these exceptions, but is just another flagrant violation of the principle of Stare Decisis.

* See also the dissenting Opinion of Mr. Justice FRANKFURTER in *Board of Education v. Barnette,* 319 U.S. 624, at page 648.