Salvador, Appellant, *v.* Atlantic Steel Boiler Co.

*Carl M. Mazzocone,* with him *Sheer, Mazzocone & Quinn,* for appellant.

*Thomas H. Goldsmith,* with him *Goushian, Mooradian, Goldsmith & Keller,* for appellees.

OPINION BY CERCONE, J., June 14, 1973:

This is an action in assumpsit, based, inter alia, on a breach of implied warranty of fitness, to recover for serious personal injuries sustained by the plaintiff-employee when a steam boiler purchased from the defendant by plaintiff's employer exploded. The court below upheld defendant's preliminary objections that the plaintiff had no standing to institute an action in assumpsit for breach of warranty against the seller and plaintiff has appealed.

The Supreme Court had ruled in *Hochgertel v. Canada Dry Corp.,* 409 Pa. 610 (1963), that the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, as amended, 12A P.S. §2-318, did not call for an extension of warranty to an employee of the purchaser. The appellant argues, however, that this decision was impliedly, though not expressly, overruled by the Supreme Court's later decision in *Kassab v. Central Soya,* 432 Pa. 217 (1968), in which the Supreme Court held that purchasers could sue remote manufacturers for breach of implied warranty. That decision was based on rea-

soning that (1) suits against remote manufacturers discouraged multiplicity of suits; and (2) the adoption by the Pennsylvania Supreme Court in *Webb v. Zern*, 422 Pa. 424 (1966), of the doctrine of strict liability of Section 402A of the Restatement of the Law of Torts allowed an action of trespass against a remote manufacturer and that the validity of plaintiff's action should not therefore be made to depend solely upon the style of the action.

Concededly, the *Kassab* case dealt with vertical privity, that is, it dealt with the question: *from whom* does the warranty run? It did not deal with, as does the instant case, the issue of horizontal privity, that is, *to whom* does the warranty run? In fact, the court in *Kassab* clearly stated in footnotes at pages 228 and 232: "[5] 'Consumer' as here used is not restricted only to the 'Purchaser' of the defective product, but also extends under section 2-318 of the U.C.C. to others who in fact use the defective goods and whose person or property is injured thereby. The exact limits of the class of such other persons (not the purchaser) who may sue a remote manufacturer in assumpsit, or for that matter anyone in the distributive chain, without a showing of privity involves the question of so-called 'horizontal' privity, an issue not before us in the present case. See Hochgertel v. Canada Dry Corp., 409 Pa. 610, 187 A. 2d 575 (1963). The requirements of section 2-318 of the Uniform Commercial Code dealing with 'horizontal privity' are discussed more fully at note 8, infra, and accompanying text." . . . "[8] Our decision today has no impact on 'horizontal privity' our holding being confined solely to the issue of whether a purchaser, a member of his family or household, or a guest in his house, may sue the remote manufacturer of a defective product for breach of warranty. Our decision therefore leaves undisturbed Hochgertel or any

other Pennsylvania decision involving the extent of the class of product *users* entitled to the protection of a seller's or manufactured warranty." Appellant argues, however, that the effect of these footnotes is merely to leave open the question of any change in the law of horizontal privity until a future case, such as the present one, directly involving that issue, called for a reconsideration of the *Hochgertel* case of 1963 in light of the subsequent adoption of Section 402A and its underlying broad social concepts which the court found in *Kassab* to be of material and governing effect in eliminating the need for vertical privity.

A reading of the *Hochgertel* decision compels us to agree with this contention of the appellant. The rationale of that 1963 decision was that "to grant such an extension of the warranty, as urged herein, would in effect render the manufacturer a guarantor of his product and impose liability in all such accident cases even if the utmost degree of care were exercised". That rationale no longer finds support in the law because the Pennsylvania courts have since adopted and have consistently followed the broad social concepts of Section 402A, which section does indeed render the manufacturer liable for a defective product regardless of its lack of negligence and its exercise of due care and this liability has been permitted to be availed of by an employee of the purchaser.[1]

It was this change in the law which caused the court in *Kassab v. Central Soya,* supra, to overrule *Miller v. Preitz,* 422 Pa. 383 (1966), which had upheld the requirement of vertical privity. The court in the *Kassab*

---

[1] For example, in *Woods v. Pleasant Hills Motor Co.*, 219 Pa. Superior Ct. 381 (1971) the applicability of section 402A to a suit by an employee was not questioned, the new trial there being awarded defendant because plaintiff-employee's evidence did not meet the burden placed on him by section 402A.

case reasoned at pages 228-229, 230-231: "We realize that prior to the adoption of section 402a of the Restatement of Torts by this Court, see Webb v. Zern, 422 Pa. 424, 220 A. 2d 853 (1966), a rather compelling argument against discarding privity in assumpsit actions for breach of warranty existed. Under the Uniform Commercial Code, once a breach of warranty has been shown, the defendant's liability, assuming of course the presence of proximate cause and damages, is absolute. Lack of negligence on the seller's part is no defense. Therefore, prior to the adoption of section 402a, it could be said that to dispense with privity would be to allow recovery in contract without proof of negligence, while requiring a showing of negligence in order to recover for the same wrong against the same defendant if suit were brought in tort. To permit the result of a lawsuit to depend solely on the caption atop plaintiff's complaint is not now, and has never been, a sound resolution of identical controversies.

"However, with Pennsylvania's adoption of Restatement 402a, the same demands of legal symmetry which once supported privity now destroy it.

". . . .

". . . the Court in Miller nevertheless retreated from the modern view because of a belief that section 2-318 of the Uniform Commercial Code requires privity in suits against a remote manufacturer. We no longer adhere to such a belief for we are convinced that, on this issue, the code must be co-extensive with Restatement section 402a in the case of product liability." This reasoning in support of the elimination of the requirement of vertical privity is equally pertinent to and governing in this case with regard to the requirement of horizontal privity. It is true, as stated by the defendant, that liability in assumpsit for breach of warranty is contractual in nature, but so was the liability

sought to be imposed in the *Kassab* case upon the defendant manufacturer by a plaintiff who had purchased the item from someone other than the defendant. The court, nevertheless, upheld the action in assumpsit for breach of warranty, despite the lack of contractual privity and despite the fact that Section 2-318 of the Uniform Commercial Code refers to the warranties of a "seller" and not to the warranties of a manufacturer. We believe that the reasoning of the court in the *Kassab* case employed to eliminate the requirement of vertical privity is equally applicable to the issue of horizontal privity here involved and that such application calls for an allowance to an injured employee of the purchaser of the right to sue the seller in assumpsit for breach of implied warranty despite the lack of contractual privity between that injured party and the seller and despite the provisions of Section 2-318 of the Uniform Commercial Code extending the seller's warranty to "any natural person who is in the family or household of his buyer or who is a guest in his home".

An extension of horizontal privity to others than those specifically referred to in Section 2-318 was recognized by the framers of the Uniform Commercial Code when in their comment to Section 2-318 they stated: "3. This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." Other jurisdictions have without difficulty interpreted Section 2-318 to be no bar to an employee's right to sue for breach of an implied warranty. In *Speed Fasteners, Inc. v. Newsom*, 382 F. 2d 395 (10th Cir. 1967), an employee of the purchaser was injured when a stud being driven by a fellow employee

split and ricocheted. The injured employee sued the stud manufacturer and the court upheld his suit under Section 2-318, saying: "The first question is whether the manufacturer's liability extends to a person who is neither a purchaser nor a user. Under the Oklahoma law the warranty extends 'to any natural person who is in the family or household of his buyer or who is a guest in his home.' The manufacturer argues that this clause has the effect of excluding all those not within the mentioned categories. We are convinced that this was not the legislative intent." . . . "In general, privity is not essential where an implied warranty is imposed by the law on the basis of public policy. We believe that the injured employee stands in the shoes of his employer and that his cause of action based on implied warranty is not barred by the shield of privity. The manufacturers know that most businesses are carried on through employees who will actually use the product purchased by their employers."[2]

If the Commercial Code is to be construed, as was done in the *Kassab* case, as "co-extensive with Restatement Section 402A in the case of product liability", therefore eliminating the necessity of vertical privity, it reasonably follows that the Code must be similarly construed so as to eliminate the necessity of horizontal privity in this suit by an employee as well. To hold otherwise would be to perpetuate without any sound

---

[2] In a comment in 14 Prac. Law 76 (1968), the "Significance" of this decision is stated as follows: "Oklahoma adopted the 'regular' version of section 2-318 . . . which extends warranties to the family or household of the buyer or a guest in his home, when there is personal injury. . . Nevertheless, the Federal Court, applying Oklahoma law, did not hesitate to hold the manufacturer liable to the buyer's employee on a warranty theory. Privity was disregarded." ". . . Comment to section 2-318 should permit extension of warranty protection to those who expect to use the product or be affected by it."

reason or basis the co-existence of two wholly inconsistent theories governing recovery in assumpsit product liability cases: one in which recovery is allowed such as in *Kassab*, and one in which it is disallowed, the distinction being merely as to the type of privity which was lacking.

The unreasonableness of this result caused the court in *Delta Oxygen Co. v. Scott*, 383 S.W. 2d 885 (Ark. Sup. Ct. 1964), to overrule prior decisions and to hold an injured employee of the purchaser entitled to sue for breach of implied warranty under Section 2-318 of the Uniform Commercial Code. The court there reasoned: "Thus, as to a natural person who is in the family or household of the buyer or is a guest in his household, etc., the Legislature has abolished the defense of privity in a breach of warranty action. Why then should we keep this old rule of 'privity' against an action for breach of warranty brought by the servant or employee of the original purchaser, as is the situation here? Delta sold the oxygen to Harry Scott, the brother of appellee Tommy Scott. If Harry Scott had resold the oxygen to Tommy Scott, then there would have been the factual situation similar to that which existed in Nelson v. Armour, supra. But Tommy Scott was the servant and employee of Harry Scott, who directed him to use the oxygen in the work. In short, there was no resale of the oxygen by the purchaser from Delta and we see no sound reason why the employee or servant of a purchaser, using the product in the course of employment as directed, should be barred from suing on the warranty because of any shield of privity.

"To apply the strict rule of privity against such an employee as here, would mean that if the purchaser of the oxygen from Delta had been a corporation then there would never have been anyone to sue on the

breach of warranty for personal injuries because a corporation could hardly have a burned arm or a burned leg. This simple homely supposition points to the common sense in allowing an employee of the purchaser to sue on the breach of warranty in a case like the one at bar. The doctrine of privity should not be a shield against a breach of warranty action in a case like the one here; and to that extent we change what some may have said was the Arkansas holding. We now hold that such an employee of the original purchaser is not barred by the defense of privity."

Plaintiff's right of recovery should not be made to depend on a narrow distinction between horizontal privity and vertical privity, which is a distinction without a difference as far as concerns lack of contractual relationship. If either horizontal or vertical privity is lacking between plaintiff and defendant, the result is the same: a lack of contractual relationship. Since such lack of contractual relationship was held in *Kassab* not to be a bar to recovery in assumpsit for breach of implied warranty, we determine that in this case as well, plaintiff-employee is not barred from his assumpsit action based on implied warranty. Since plaintiff's rights and defendant's liabilities in an assumpsit action can now be determined, as stated in the *Kassab* decision, in a scope co-extensive with that of Section 402A, the basis of the *Hochgertel* decision no longer exists. Today, the elimination of the requirement of horizontal privity would not, as it would have at the time of the *Hochgertel* decision, impose upon a seller any greater liability to the purchaser's employee than would otherwise exist in tort. Nor does dispensing with the requirement of privity in this suit by an employee do violence to the contractual theory of the action for breach of warranty. As was pointed out by Dean William L. Prosser in his learned treatise "Strict Liability

to the Consumer", 69 Yale Law Journal 1099 (1960) : "The action for breach of warranty was originally one on the case sounding in tort and closely allied to deceit; and it was not until 1778 that the contract action was held to lie at all. . . The conclusion from all this is obvious. If warranty is a matter of tort as well as contract, and if it can arise without any intent to make it a matter of contract, then it should need no contract; and it may arise and exist between parties who have not dealt with one another." This was the same reasoning applied in *Debbis v. Hertz Corp.*, 269 F. Supp. 671 (D.Md. 1967), wherein the court stated: "While breach of an implied warranty is basically a contract rather than a tort action, it, nevertheless, has roots which spring essentially from a tort background. W. Prosser, Law of Torts, 651-52 (3d ed. 1964).[13]"

We hold, therefore, that the plaintiff-employee is entitled to maintain his action in assumpsit for breach of implied warranty. The fact that the statute of limitations has run on his tort action thus becomes immaterial. A personal injury claim based upon a breach of warranty is distinct from a personal injury claim based on negligence and can be commenced within four years after the cause of action has occurred: Uniform Commercial Code of 1953, P. L. 3, §2-725, as amended; *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415 (1964).

---

"[13] See also comment, 65 W.Va.L.Rev. 326, 328 (1963). Originally an action grounded on breach of warranty, sounded in tort rather than contract. Ames, History of Assumpsit, 2 Harv. L. Rev. 1, 8 (1888). It was not until late in the 18th century that a contract action derived for breach of warranty. Today, because of this mistake in legal history, warranty has become a hybrid of both tort and contract and may operate between parties not in privity of contract."

Order sustaining preliminary objections reversed; complaint reinstated; and case remanded for further proceedings.

SPAULDING, J., concurs in the result.

WATKINS and JACOBS, JJ., dissent.