Salvador *v.* Atlantic Steel Boiler Co. et al.,
Appellants.

Argued January 14, 1974. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Thomas H. Goldsmith,* with him *Goushian, Mooradian, Goldsmith & Keller,* for appellants.

*Carl M. Mazzocone,* with him *Glenn A. Troutman,* and *Mazzocone & Quinn,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 22, 1974:

In *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), this Court abolished the requirement of vertical privity in actions for breach of warranty. Today the question is whether the doctrine of horizontal privity should likewise be abandoned.[1] We conclude that the

---

[1] "Privity of contract is that connection or relationship which exists between two or more contracting parties." Black's Law Dictionary 1362 (4th ed. 1951). See 4 A. Corbin, Contracts § 778 (1951); 8 S. Williston, Contracts § 998A (3d ed. 1964).

If a purchaser is injured by a defective product he may, of course, bring a breach of warranty claim against the seller. As contracting parties they are in privity. If the injured purchaser wishes to sue the manufacturer or wholesaler he must overcome the privity requirement. Because his contractual relationship is only with the retail seller he cannot establish "vertical" privity with the wholesaler; he is one step further removed from the manufacturer. The "vertical" privity chain begins at the retailer and continues through any number of levels to the manufacturer of the defective product. The question of vertical privity is "who can be sued"?

The question of horizontal privity is "who can sue"? The purchaser can sue the retail seller because they are in privity. When the requirement of vertical privity has been abolished, he may also sue any other entity in the distributive chain. But if the purchaser's wife is injured by a defective product, may she maintain a breach of warranty action? See Uniform Commercial Code § 2-318, 12A P.S. § 2-318 (1970). May the purchaser's injured employee sue successfully? If a bystander is injured is he too entitled to recover for breach of warranty? These are questions of horizontal privity.

See Note, 68 Dick. L. Rev. 444, 445-47 (1963). See also Murray, Pennsylvania Products Liability: A Clarification of the Search for a Clear and Understandable Rule, 33 U. Pitt. L. Rev. 391 (1972).

It is interesting to note that at early common law breach of warranty was a trespass action. As such, no privity was required. The later-developed *indebitatus assumpsit* was created as an alternative remedy. The privity requirement was later only applied to assumpsit. At the time of this development, the majority of commercial transactions involved direct manufacturer-consumer relationships, and privity worked no hardship. *Freeman v. Navarre*, 47 Wash. 2d 760, 765-66, 289 P.2d 1015, 1017-18 (1955); *Escola v. Coca Cola Bottling Co.*, 24 Cal. 2d 453, 466, 150 P.2d 436, 443 (1944)

theoretical foundation which once supported horizontal privity has been undermined; we hold that lack of horizontal privity itself may no longer bar an injured party's suit for breach of warranty.

Allegedly as a result of the explosion of a steam boiler on May 22, 1967, at his place of work, Ahmed Salvador suffered the loss of approximately 77 per cent of his ability to hear. On March 29, 1971, Salvador filed a summons in assumpsit naming as defendants his employer, the retail seller of the boiler, and appellants, the manufacturers of the exploding steam boiler. A complaint was filed on February 3, 1972, and the manufacturers filed preliminary objections in the nature of a demurrer. The trial court sustained the preliminary objections and dismissed the complaint in assumpsit because plaintiff-appellee did not allege a contractual relationship with appellants and thus horizontal privity was lacking.[2]

In an opinion by Judge CERCONE, the Superior Court reversed. *Salvador v. Atlantic Steel Boiler Co.*, 224 Pa. Superior Ct. 377, 307 A.2d 398 (1973).[3] That court reasoned that the thrust of *Kassab* was the desire to reach the same result in a lawsuit arising from particular facts whether the action is brought in trespass or assumpsit. Id. at 383-84, 307 A.2d at 402. Concluding

---

(TRAYNOR, J., concurring). See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1126 (1960). See also 2 L. Frumer & M. Friedman, Products Liability § 16.03[1] (1973) ; Ames, The History of Assumpsit, 2 Harv. L. Rev. 1 (1888).

[2] The second count of appellee's complaint which was apparently based on a trespass theory was not dismissed. Appellants have answered the allegations in count two by asserting that the trespass action is barred by the two-year personal injury statute of limitations. Act of March 27, 1713, Sm. L. 76, § 1, 12 P.S. § 31 (1953). This question is not presently before us.

[3] Judge SPAULDING concurred in the result. Judges WATKINS and JACOBS noted dissent.

that the adoption of section 402A of the Restatement (Second) of Torts (1965),[4] eliminates the logical basis for both vertical and horizontal privity, the Superior Court held that the *Kassab* rationale dictated abolition of the horizontal privity requirement in breach of warranty actions. The order sustaining preliminary objections was reversed and the complaint reinstated. We granted the manufacturers' petition for allowance of appeal;[5] we affirm.

In *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 187 A.2d 575 (1963), plaintiff, engaged in his duties as a bartender, was injured by flying glass when a bottle of carbonated soda exploded. He sued Canada Dry, the manufacturer, alleging breach of implied warranties. Because Hochgertel was neither the purchaser, a member of the purchaser's family, nor a guest in purchaser's home, this Court held that he could not establish any horizontal privity relationship with the manufacturer. Hence he could not recover.

That decision was based on the Uniform Commercial Code, section 2-318,[6] "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

Although this Court determined that Hochgertel as an employee was "definitively in none of these [§ 2-318]

---

[4] Section 402A was adopted in Pennsylvania by this Court's decision in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

[5] See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp. 1973).

[6] Act of April 6, 1953, P.L. 3, § 2-318, reenacted October 2, 1959, P.L. 1023, § 2, 12A P.S. § 2-318 (1970).

categories,"[7] it nevertheless recognized that the Code was not dispositive. "Since the Code was not intended to restrict the case law in this field (see § 2-318, Comment 3 . . .)[8] a study of pertinent Pennsylvania authorities is also necessary for the purposes of this decision."[9] After examining the relevant case law, this

---

[7] *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 614, 187 A.2d 575, 577 (1963). See also *Miller v. Preitz*, 422 Pa. 383, 397, 221 A.2d 320, 327 (1966) (BELL, C. J., concurring).

The Supreme Court of California, however, on analogous facts, held an employee to be part of the employer's industrial "family." *Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339, 353 P.2d 575, 5 Cal. Rptr. 863 (1960); accord, *Hart v. Goodyear Tire & Rubber Co.*, 214 F. Supp. 817 (N.D. Ind. 1963).

[8] Comment 3 provides: "This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain."

[9] *Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 614, 187 A.2d 575, 578 (1963). It should be noted that other jurisdictions have found § 2-318 no impediment to permitting recovery in the absence of horizontal privity. In *Hoffman v. A. B. Chance Co.*, 346 F. Supp. 991 (M.D. Pa. 1972), plaintiff had been injured when a brake failed and he was thrown from a mobile platform. The court refused to dismiss the complaint. In light of *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), the court reasoned § 2-318 would not prevent an employee from recovering for a product-related injury. *Hochgertel*, it concluded, "would be reversed . . . today." Id. at 992-93.

*Speed Fasteners, Inc. v. Newsom*, 382 F.2d 395 (10th Cir. 1967) (Oklahoma law), was a suit by an employee for injuries suffered when a stud manufactured by defendant split and ricocheted. The Tenth Circuit stated: "We believe that the injured employee stands in the shoes of his employer and that his cause of action based on implied warranty is not barred by the shield of privity. The manufacturers know that most businesses are carried on through employees who will actually use the product purchased by their employers." Id. at 398. See *Salvador v. Atlantic Steel Boiler Co.*, 224 Pa. Superior Ct. 377, 382-83, 307 A.2d 398, 402 (1973).

Court concluded that no Pennsylvania case had extended warranty protection beyond the class of persons enumerated in section 2-318. The *Hochgertel* Court in 1963 declined to do so.

The limitations imposed by *Hochgertel* were quickly challenged. *Yentzer v. Taylor Wine Co.*, 414 Pa. 272, 199 A.2d 463 (1964), decided only one year later on almost identical facts, permitted recovery. There, plaintiff, a hotel employee, purchased a bottle of champagne manufactured by defendant. It was undisputed that Yentzer was acting as an agent of his employer. While preparing to serve the wine to hotel guests, the cork ejected and struck plaintiff in the eye. The trial court concluded that *Hochgertel* controlled, but this Court commented: "We do not think that the rigid construction we placed on a seller's warranty in *Hochgertel* should be extended to a situation such as this." *Yentzer v. Taylor Wine Co.*, supra at 274, 199 A.2d at 464. We held that even though he acted as the agent of his employer, because the employee had actually purchased the champagne himself, he was a "buyer."[10] The dissent properly pointed out that the Court's analysis represented a "clear departure" from *Hochgertel*.[11]

─────

See also *Delta Oxygen Co. v. Scott*, 238 Ark. 534, 383 S.W.2d 885 (1964) ; *Hamon v. Digliani*, 148 Conn. 710, 174 A.2d 294 (1961). But see *Henry v. John W. Eshelman & Sons*, 99 R.I. 518, 209 A.2d 46 (1965) ; *Tucker v. Capitol Machine*, 307 F. Supp. 291 (M.D. Pa. 1969) (Pennsylvania law). See generally Murray, Pennsylvania Products Liability: A Clarification of the Search for a Clear and Understandable Rule, 33 U. Pitt. L. Rev. 391 (1972) ; Murray, Products Liability—Another Word, 35 U. Pitt. L. Rev. 255 (1973) ; Note, 68 Dick. L. Rev. 444 (1964).

[10] See Uniform Commercial Code §§ 2-103(1)(a), 2-318, 12A P.S. §§ 2-103(1)(a), 2-318 (1970).

[11] *Yentzer v. Taylor Wine Co.*, 414 Pa. 272, 275, 199 A.2d 463, 465 (1964). Mr. Justice EAGEN, the author of *Hochgertel*, was joined in dissent by Chief Justice BELL.

Between *Yentzer* and the present case several significant developments occurred in Pennsylvania products liability law. In 1966, *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), adopted section 402A as the law of Pennsylvania. This section imposes liability on the seller or manufacturer of a defective product regardless of the lack of proven negligence or the lack of contractual relation between the seller and the injured party. On the same day, this Court issued its opinion in *Miller v. Preitz*, 422 Pa. 383, 221 A.2d 320 (1966), reaffirming the requirement of vertical privity in an action for injuries suffered through a breach of warranty.[12]

---

[12] Both Justice, now Chief Justice, JONES and this writer filed concurring and dissenting opinions.

In answer to the *Miller* plurality's assertion that only persons designated in § 2-318 could maintain an action in assumpsit for breach of warranty, Mr. Justice JONES relied on § 2-318, Comment 3. After listing those who the Code expressly permits to recover for breach of warranty, Comment 3 continues, "Beyond this, this section is neutral and is not intended to restrict the developing case law . . . ." Mr. Justice JONES stated:

"In my view, § 2-318 does not provide the ultimate extent to which the warranties may go; on the contrary, it permits the developing case-law in each jurisdiction to determine how far the extension of the warranties may go or whether any privity requirement should be retained.

. . . .

"While I believe that the retention of the concept of privity is unsound, at least, if we are to retain the requirement of privity,— actual or fictitious,—then I would eliminate any requirement that the suing party must occupy any special status and would hold that the warranties extend to any person or persons whom the seller could have reasonably foreseen would use, consume or be affected by the product." 422 Pa. at 405 & 408-09, 221 A.2d at 331 & 333. See also id. at 423-24, 221 A.2d at 341 (concurring & dissenting opinion of this writer). For a thoughtful discussion of § 2-318 and Comment 3, see Murray, Pennsylvania Products Liability: A Clarification of the Search for a Clear and Understandable Rule, 33 U. Pitt. L. Rev. 391, 396-98 (1972).

Only two years later *Miller* was overruled in *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968). The Kassabs were purchasers of allegedly defective cattle feed and therefore no question of horizontal privity was presented. The manufacturer of the product, however, argued that it could not be liable because no vertical privity was present, that is, only the retailer and not it, the manufacturer, had a contractual relation with plaintiffs.

We noted that our adoption of section 402A in *Webb v. Zern* obliterated any logical basis for retaining the demand for vertical privity.

"Under the Uniform Commercial Code, once a breach of warranty has been shown, the defendant's liability, assuming of course the presence of proximate cause and damages, is absolute. Lack of negligence on the seller's part is no defense. Therefore, prior to the adoption of section 402a, it could be said that to dispense with privity would be to allow recovery in contract without proof of negligence, while requiring a showing of negligence in order to recover for the same wrong against the same defendant if suit were brought in tort. To permit the result of a lawsuit to depend solely on the caption atop plaintiff's complaint is not now, and has never been, a sound resolution of identical controversies." 432 Pa. at 228-29, 246 A.2d at 853. The Court concluded that "on this issue [vertical privity], the code must be co-extensive with Restatement section 402a in the case of product liability." Id. at 231, 246 A.2d at 854 (footnote omitted).

*Kassab* dealt only with the issue of vertical privity.[13] The Superior Court nevertheless concluded that *Kassab's* rationale likewise required the abolition of the requirement of horizontal privity in breach of warranty cases. We believe the Superior Court is correct.

---

[13] See *Kassab v. Central Soya*, 432 Pa. 217, 228-32 & nn. 5, 6, & 8, 246 A.2d 848, 853-55 & nn. 5, 6, & 8 (1968).

The basic reason for the *Hochgertel* Court's reticence to impair the horizontal privity requirement was that "[t]o grant such an extension of the warranty, as urged herein, would in effect render the manufacturer a guarantor of his product and impose liability in all such accident cases even if the utmost degree of care were exercised. This would lead to harsh and unjust results." 409 Pa. at 615-16, 187 A.2d at 578.

Today, as the Superior Court correctly recognized, a manufacturer by virtue of section 402A is effectively the guarantor of his products' safety. See *Webb v. Zern,* supra; *Kassab v. Central Soya,* supra. Our courts have determined that a manufacturer by marketing and advertising his product impliedly represents that it is safe for its intended use. We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect. He may not preclude an injured plaintiff's recovery by forcing him to prove negligence in the manufacturing process. *Webb v. Zern.* Neither may the manufacturer defeat the claim by arguing that the purchaser has no contractual relation to him. *Kassab v. Central Soya.* Why then should the mere fact that the injured party is not himself the purchaser deny recovery?

Because the manufacturer is now a guarantor, the "harsh and unjust result" is worked on the plaintiff who may recover for his injury or loss if his complaint is in trespass, but on identical facts would be denied relief if the pleading is captioned "Complaint in Assumpsit." See *Kassab,* supra at 229, 246 A.2d at 853. This anomalous situation is certainly to be avoided.[14] Thus "[w]ith Pennsylvania's adoption of Restatement 402a,

---

[14] See *Salvador v. Atlantic Steel Boiler Co.,* 224 Pa. Superior Ct. 377, 381, 307 A.2d 398, 401 (1973).

the same demands of legal symmetry which once supported privity now destroy it." Id.

Though we must overrule *Hochgertel,* this is not an occasion when a court reexamines its precedents and finding them in error returns to a "correct" view. On the contrary, as we have said, when *Hochgertel* was decided it was clearly the appropriate accommodation between the law of torts and the law of contracts. Since then Pennsylvania products liability law has progressed, and demands of public policy[15] as well as legal symmetry compel today's decision.

The order of the Superior Court is affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

[15] The policy reasons for abolition of the privity requirement are summarized in W. Prosser, Handbook of the Law of Torts § 97, at 650-51 (4th ed. 1971). First, the public interest in the protection of human life justifies the imposition upon consumer products suppliers of full responsibility for harm resulting from use of the products. Second, as we have stated, the manufacturer by marketing and advertising the product impliedly represents that it is safe for the intended use and society should not allow him to avoid responsibility. Finally, multiplicity of actions will be avoided by permitting a direct action by the injured party against the manufacturer. See *Kassab v. Central Soya,* 432 Pa. 217, 230 n.6, 246 A.2d 848, 854 n.6 (1968) ; *Escola v. Coca Cola Bottling Co.,* 24 Cal. 2d 453, 462, 150 P.2d 436, 440-41 (1944) (TRAYNOR, J., concurring).