**Kercsmar v. Pen Argyl Area
School District**

*Norman H. Abrahamson,* for plaintiffs.
*Stanley Stettz,* for defendant.

FRANCIOSA, *J.,* January 21, 1976—This matter is before the court on a myriad of preliminary objections by numerous defendants to plaintiffs' complaint in trespass and assumpsit.

What sparked this legal activity was an unfortunate accident which occurred on January 5, 1973, while plaintiff was conducting a high school chemistry experiment. A suit was initiated by the minor plaintiff, Jayne Kercsmar, and her parents against (1) C.C.M: Cambosco, Inc., who it is averred manufactured and sold the acetone used in the experiment; (2) Corning Glass Co., who it is averred designed, manufactured and sold the flask used in the procedure; (3) Pen Argyl Area School District, whose employe was the school teacher who directed, supervised and taught plaintiff; (4) D. Van Nostrand Co., Inc., who it is averred pub-

lished, printed and sold Chemistry, a Modern Approach, which provided directions and an illustration for the experiment; (5) Margaret Nicholson, Harold V. Wik, John C. Hogg and Charles L. Bickel, the authors of said book.

## JURISDICTION

The most prefatory of all preliminary objections is one raising a question of jurisdiction. The four authors of the aforementioned textbook are all nonresidents of Pennsylvania and contend that the use of Pennsylvania's long-arm statute[1] to confer personal jurisdiction upon defendant-authors would be violative of their constitutional due process rights.

The concept of jurisdiction over the person has expanded greatly since Pennoyer v. Neff, 95 U. S., 714, 24 L. Ed. 565 (1877). The watershed opinion of the Supreme Court in International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S. Ct. 154 (1945), expressed the modern approach as to jurisdiction and due process:

". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' ": id. at 316.

International Shoe, supra, provided the impetus for the enactment of long-arm statutes that would facilitate service of process, especially upon corpo-

---

1. Act of November 15, 1972, P.L. 885 (No. 271), sec. 8301, et seq., 42 Pa. C.S. §8301, et seq.

4

rations having some minimum contact with the forum State. The concept has been expanded to individuals, and the following recently enacted statute is applicable to the case at bar:

"Sec. 8305 — Causing harm by individuals

"Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct. Service of process in any such civil action or proceeding shall be effected through the Department of State as provided in this Chapter.": 43 Pa. C.S. §8305.

In the case at bar, it is alleged that the four individual defendants wrote a textbook and contracted with the publisher to have their book printed and sold throughout the United States. It was thus reasonable for the authors to foresee that, through the publishers, the book would be sold to outlets around the country, including the schools of Pennsylvania. As a result of the writing and distribution of said book, plaintiff complains that her accident and injuries were caused by the "negligence, carelessness, wilfullness and wantonness . . ." of the publisher and the authors, their authorized agents, servants and employes, in that the instruction and diagram for setting up the apparatus for an experiment, "were improper, insufficient and misleading, and did not warn of the dangers involved."[2]

2. Paragraph 19 of said complaint.

Based on this allegation, jurisdiction would seem to properly attach under the long-arm statute, 42 Pa. C.S. §8305, quoted above. An additional ground for jurisdiction would lie under 42 Pa. C.S. §8304, entitled, "Doing Business by Individuals."[3] By contracting to have the book distributed in return for royalties, the authors received direct pecuniary gain from the distribution of the text within the Commonwealth. The act of distribution, which, in effect, was performed by defendants' agents, provided the minimum contacts demanded by International Shoe, supra. See also Procter & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa. Superior Ct. 12, 323 A. 2d 11 (1974). Conferring jurisdiction on this basis would not be offensive to "fair play" or "substantial justice."[4]

---

3. "Any nonresident of this Commonwealth who, acting individually under or through a fictitious business name, or through an agent, servant or employee, shall have done any business in this Commonwealth on or after August 30, 1970, or a resident of this Commonwealth who shall have done business in this Commonwealth on or after August 30, 1970 and thereafter shall have become a nonresident of this Commonwealth or shall conceal his whereabouts, shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual, if and only if at the time the cause of action occurred or the harm or financial loss occurred, the nonresident or the resident who shall thereafter have become a nonresident, shall have been doing any business within this Commonwealth as heretofore provided."

4. This court, in Garis v. Mouldings, Inc., 53 D. & C. 2d 53, at 56 (Northamp. 1971), quoted from the Ninth Circuit decision of Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F. 2d 231, 235 (1969):

" ' "We do not regard it as offensive to fair play or substan-

Defendants, however, urge the court to qualify any interpretations of the aforementioned statute with the condition of "reasonableness."[5] Such restraint, it is argued, is especially necessary where First or Fourteenth Amendment rights are involved.[6]

---

tial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade." ' "

In a recent Superior Court case, Stepnowski v. Avery, 234 Pa. Superior Ct. 492, 340 A. 2d 465 (1975), Judge Jacobs cautions that "what may be 'fair play' and 'substantial justice' as to corporations may not always be such as to individuals.": id. at 468. The Stepnowski court concluded that to invoke a long-arm statute by applying the term "doing business" to the incidental sale of a personal residence would be offensive to traditional notions of fair play and justice. Of course, in the present case, "doing business" is not essential to predicate jurisdiction upon 42 Pa. C.S. §8305. The court does feel, however, that this case is distinguishable from Stepnowski in that the authoring of a text is not an isolated act, but it is a calculated business enterprise, undertaken by members of a profession and in which success is manifest by broad penetration into a buyer's market, including this jurisdiction.

5. In support of this contention, defendants cite Restatement 2d, Conflicts of Laws, §37:

"Causing Effects in State by Act Done Elsewhere

"A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

6. In its caveat to the section quoted in footnote 5 above, the American Law Institute expressed no opinion as to whether in situations where the interest of defendant is protected by the First and Fourteenth Amendments of the Con-

Freedom of speech is not absolute. See Tunnell v. Wiley, 369 F. Supp. 1260 at 1268 (E. D. Pa., 1974). The court will not permit the First Amendment to insulate defendants from the reach of its jurisdiction where facts may later prove that liability is warranted on the basis of this particular publication. There is no right to be free to commit tortious acts or distribute defective or dangerous products.[7]

Furthermore, plaintiff alleges that the book failed to warn of the danger involved with the experiment. Chief Justice Jones, writing for the Supreme Court of Pennsylvania, recently stated:

"A 'defective condition' is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product. A seller must give such warning and instructions

stitution, it is necessary that a State have a more substantial basis for the exercise of judicial jurisdiction over a nonresident defendant than would otherwise be required.

7. This substantive issue of tortious and warranty liability for physical injury on the basis of the words of a book is novel. This is clearly not within the often litigated defamation and privacy areas where First Amendments rights are discussed at length. The court does not feel that First Amendment rights would be chilled if authors of informational texts are held liable for physical harm caused as a result of their tortious conduct. A book, such as that which is the subject of a portion of this lawsuit, might well prove to be a defective product within the ever-expanding field of products liability. See Engel v. Lawyers Co-Operative Publishing Co., 198 So. 2d 93 (Fla. App., 1967), where lawyers relied on a set of books distributed by defendants which provided an erroneous statute of limitations. An action based on implied warranty was initiated by the lawyers and their client. The Florida Court dismissed the action as to the clients who were held to be non-users. The sufficiency of the complaint as it applied to the attorney was not before the court on that appeal.

as are required to inform the user or consumer of the possible risks and inherent limitations of his product.": Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A. 2d 893 (1975).

Hence, the duty imposed is an affirmative one to warn, not a negative one that would chill the author's freedom to write and publish. We do not regard it unreasonable or offensive to the First Amendment to attach jurisdiction in this case.

Secondary due process considerations for the court are the interest of the forum State and convenience: Rosen v. Solomon, 374 F. Supp. 915 (E. D. Pa. 1974). The forum State has the obvious interest of protecting its injured citizen. Also, while this law suit must inconvenience many of the defendants, such a burden is one assumed when the choice is made to have contact with the Commonwealth for pecuniary gain. Pennsylvania, being the situs of the accident, would be the most convenient place to gather witnesses to the events giving rise to the action and insure an efficient and just determination of the case. See, generally, 10 P.L.Encyc. Courts §13.

We, thus, conclude that plaintiffs have properly obtained jurisdiction over defendants, Margaret Nicholson, Harold V. Wik, John C. Hogg and Charles L. Bickel.

## PRELIMINARY OBJECTIONS TO
## TRESPASS COUNTS

Defendants, C.C.M.: Cambosco, Inc., D. Van Nostrand Company, Inc., Nicholson, Wik, Hogg, Bickel and the Pen Argyl Area School District, all objected to the allegation that the injuries caused

to plaintiff were a result of their "willful and wanton" conduct. The Superior Court in Ammlung v. Platt, 224 Pa. Superior Ct. 47 at 58-9, 302 A. 2d 491, at 497 (1973), pronounced the procedural requisites for such averments:

"Under Pa. R.C.P. No. 1019(b), '[m]alice', intent, knowledge, and other conditions of the mind may be averred generally.' Wantonness, being in principle a state of mind, has been regarded as included within the rule. [citations omitted] The permissibility of pleading a condition of the mind generally, in a fact-pleading state, is, of course, founded upon necessity. The allowance of such pleading was not meant, however, to dispense with the requirement that material facts constituting the conduct of a defendant also be pleaded." See also Guzik v. Poliner, 42 Northamp. 134 (1975).

With respect to defendants, C.C.M.: Cambosco, Inc., D. Van Nostrand Company, Inc., and the four authors, there are no material facts pleaded within the complaint to support such an allegation, and, therefore, the words "willful and wanton" must be stricken. With respect to defendant, Pen Argyl Area School District, the court feels that plaintiff has alleged sufficient material facts to justify overruling the objection at this stage in the proceedings.[8]

8. In paragraph 16 of plaintiffs' complaint the following averments appear:

(a) failing to properly supervise the setting up of the apparatus;

(b) failing to properly inspect the apparatus;

(c) failing to properly instruct Jayne Kercsmar;

(d) allowing Jayne Kercsmar to perform the procedure without anyone present and without proper and adequate supervision;

Further objections to the trespass counts were filed by D. Van Nostrand Company, Inc., and the four author-defendants in the form of a demurrer and a motion for more specific complaint.

"There is no fixed standard for determining the sufficiency of a pleading, and each pleading must be appraised in light of the circumstances of the particular case involved: The criterion being merely whether the pleading achieves its purposes of informing the court and the adverse parties of the matters in issue.": 2A Anderson, Pa. Civ. Prac., §1019.16.

The court finds that the pleadings are sufficient and do state a cause of action as currently stated.

Defendant-authors also demur, claiming that plaintiffs' averments tend to show improper conduct on the part of other parties exclusive of the authors. This objection is without merit, since plaintiff has done no more than exercise her option to plead alternative causes of action. See 2A Anderson, Pa. Civ. Prac. §1020.9.

Accordingly, all preliminary objections relating to the negligence counts, save that regarding the

(e) instructing and permitting Jayne Kercsmar to perform the procedure in an unventilated room;

(f) instructing and permitting Jayne Kercsmar to set up the apparatus in an improper manner;

(g) failing to instruct Jayne Kercsmar in the proper manner to set up and use the apparatus and equipment;

(h) directing Jayne Kercsmar to proceed with the distillation when it knew, or should have known, that: the apparatus was improper and defective; improperly set up and assembled; and that Jayne Kercsmar was not sufficiently trained and skilled to perform the procedure;

(i) instructing Jayne Kercsmar to follow the procedure and directions set forth in the said book without previously ascertaining whether or not the procedure and directions were proper and sufficient.

allegations of "willful or wanton" conduct previously discussed, are denied and dismissed.

## PRELIMINARY OBJECTIONS TO ASSUMPSIT COUNTS

Defendants, D. Van Nostrand Company, Inc., and the four authors have also filed objections in the form of demurrers and motions for a more specific complaint with respect to the assumpsit counts alleging breaches of express and implied warranties.

Initially, this court concludes that the assumpsit actions fall within the scope of article 2 of the Uniform Commercial Code, Act of April 6, 1953, P.L. 3, sec. 2-101, et seq., re-enacted 1959, P.L. 1023, sec. 2, 12A P.S. §2-101, et seq. The code applies to transactions in goods: 12A P.S. §2-102. Goods are defined as *"all things* (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and the things in action.": 12A P.S. §2-105(1) (emphasis supplied.)

Defendants argue that an experiment in a book cannot possibly be "movable," and hence, not a "good." However, we deem it to be the text book which constitutes the "goods," while the description of the chemistry experiment contained therein is the defect, ergo—the breach. Today, when the Supreme Court has heralded the demands of public policy and legal symmetry, we cannot afford to take a myopic view in the area of products liability. See Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A. 2d 903 (1974); Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A. 2d 893 (1975). Finally, such warranties derived from the Code

may be enforced by the plaintiffs since case law has obviated the necessity of horizontal privity: Salvador v. Atlantic Steel Boiler Co., supra.

With respect to express warranties, the Code states:

"(1) Express Warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

There is no averment in the instant complaint specifying any such warranty made by defendants. Nor, has plaintiff stated the contract condition of which defendants are in breach. Therefore, the court finds no cause of action stated with respect to express warranties and, accordingly, sustains defendants' demurrers as to said warranties.

Such expression is not necessary with respect to implied warranties. The averment of an injury due

to the defect in the text (the chemistry experiment) is sufficient for the liberal implied warranty pleading requisites. See Sellers v. Sharon Chrysler-Plymouth, 49 D. & C. 2d 483 (1970) and 50 D. & C. 2d 179 (1970). The granting of a demurrer, therefore, would be inappropriate.

Further objections in the nature of motions for a more specific complaint are denied and dismissed, since the pleadings adequately appraise defendants of the matters at issue. See 2A Anderson, Pa. Civ. Prac. §1019.16, quoted above. Where the matter involved is equally or more in the knowledge of the objecting party, as is true in this case, the requirements of precision and detail are more easily met: Local No. 163, Intl. Union of United Brewery, etc. v. Watkins, 417 Pa. 120, 207 A. 2d 776 (1965). Moreover, defendants are not harmed by a refusal of their motions for a more specific complaint, since discovery proceedings are available to help defendants get any appropriate information. See Wiggins v. Protecto Plastics, Inc., et al., April term, 1970, no. 3 (filed January 25, 1971, Palmer, P. J.).

Wherefore, we enter the following

### ORDER

And now, January 21, 1976, for the reasons appearing in the foregoing opinion, it is ordered, adjudged and decreed that:

1. The petition of defendants, Margaret Nicholson, Harold V. Wik, John C. Hogg and Charles L. Bickel, raising a question of jurisdiction is denied and dismissed.

2. The preliminary objections filed by defendants to the words "wilfulness and wantonness," contained in paragraphs 17 and 19 and paragraph 38 by incorporation of plaintiffs' complaint, are sustained and the words "wilfulness and wanton-

ness" will be stricken therefrom unless, within 20 days from the date of this order, plaintiffs file an amended complaint containing factual averments which would support a charge of willful and wanton conduct.

3. The preliminary objection by defendant, Pen Argyl Area School District, to the words "wilfulness and wantonness" contained in paragraph 16 and 38 by incorporation, is denied and dismissed.

4. The demurrer to the fifth and sixth counts of plaintiffs' complaint with respect to express warranty is sustained.

5. All other preliminary objections are denied and dismissed.

6. In accordance with this order, plaintiffs are given leave to file an amended complaint within 20 days of this order.

7. Defendants are directed to file an answer to plaintiffs' assumpsit counts within 40 days of this order and, if they desire to do so, shall be permitted to file an answer to the trespass counts within said period.