Kathleen **PATTERSON, a minor by her parents and natural guardians, Martin Patterson and Carole Patterson and Martin Patterson and Carole Patterson Individually and in their own right**

v.

**HER MAJESTY INDUSTRIES, INC.**

v.

**LIT BROTHERS, INC.**

v.

**AVONDALE MILLS, Fab Industries, Burlington Industries and Wade Manufacturing Company.**

Civ. A. No. 75–1612.

United States District Court,
E. D. Pennsylvania.

March 31, 1978.

**426**

Dennis R. Suplee, Philadelphia, Pa., for plaintiff.

Morton F. Daller, Philadelphia, Pa., for Her Majesty.

Paul A. Bechtel, Jr., Philadelphia, Pa., for Lit Brothers.

Kean K. McDonald, Philadelphia, Pa., for Avondale Mills.

Charles J. Bogdanoff, Philadelphia, Pa., for Fab Industries.

Barbara A. Pennell, Philadelphia, Pa., for Burlington Ind.

William T. Campbell, Jr., Philadelphia Pa., for Wade Mfg.

## OPINION

DITTER, District Judge.

This is a diversity suit for personal injuries sustained by minor plaintiff when a pair of pajamas she was wearing caught fire. Presently before the court is the motion of the garment's manufacturer for summary judgment on the ground that the statute of limitations for plaintiffs' breach of warranty claim expired before the action was brought. For the reasons hereafter advanced, I find that the statute of limitations began to run on the date of the retail sale to plaintiffs, the suit was timely brought, and the motion must be denied.

### 1. Factual and Procedural History

On September 24, 1971, plaintiff, Carole Patterson, purchased a pair of pajamas from Lit Brothers, a retail store, for her daughter Kathleen, then age 12. Her Majesty Industries, Inc., (Her Majesty), had manufactured the pajamas and sold them to Lit Brothers for resale to the public. On the evening of October 11, 1971, Kathleen wore these pajamas to bed for the first time. The next morning, while preparing breakfast in her home, Kathleen reached over a gas stove to get a teabag. As she did, a spark from the stove contacted the lower portion of the pajama top. Almost instantaneously, the top was consumed by flames and Kathleen was badly burned.

On June 6, 1975, plaintiffs started suit against Her Majesty on theories of breach of warranty, negligence, and strict liability because the pajamas were not resistant to flame and Her Majesty had failed to provide appropriate warning. Thereafter, on December 9, 1975, leave was granted to join Lit Brothers as a third party defendant.[1] By order dated July 15, 1976, I entered judgment on the pleadings in favor of Her Majesty on those counts of the complaint based on negligence and strict liability since

---

1. The other defendants were joined as follows. On March 1, 1976, Her Majesty joined Burlington Industries, which made the nylon tricot used to make spaghetti bow decorations on the pajama top, Avondale Mills, which sold the fabric to Burlington Industries, and Fab Industries, which allegedly manufactured the lace decorating the pajama top. Avondale Mills filed a third party complaint against Wade Manufacturing which actually manufactured the fabric used by Burlington on June 15, 1976.

they were barred by the applicable two-year statute of limitations.

Her Majesty has now moved for summary judgment with respect to the breach of warranty claim, contending that 1) Pennsylvania would apply a two-year statute of limitations,[2] and 2) if a four-year statute of limitations does apply, as provided in Section 2–725 of the Uniform Commercial Code, 12 P.S. § 2–725, it began to run as of the date of the sale by Her Majesty to Lit Brothers, which was more than four years prior to the start of suit.[3] Plaintiffs urge the motion be denied and maintain that a four-year statute of limitations does apply and that it runs from the date of the retail sale and, alternatively, that Her Majesty's warranty explicitly extended to future performance so the statute started to run as of the date of the accident. After an analysis of Pennsylvania cases and those of other state and federal tribunals, I have concluded that the statute of limitations begins to run from the retail sale date and is of four years duration.

Oddly, this appears to be a case of first impression. Neither my continuous and exhaustive research nor that of counsel has disclosed any case that addresses this particular issue. Inasmuch as no Pennsylvania cases are on point, my decision must be governed by a prediction of what a Pennsylvania court would rule if this matter came before it. *Becker v. Interstate Properties*, 569 F.2d 1203 at 1205–1206 (3d Cir., filed December 21, 1977); *Knapp v. North American Rockwell*, 506 F.2d 361, 367 (3d Cir. 1974), cert. denied 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). As in any diversity case,

> a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts. A diversity litigant should not be drawn to the federal forum by the prospect of a more favorable outcome than he could expect in the state courts. But neither should he be penalized for his choice of the federal court by being deprived of the flexibility that a state court could reasonably be expected to show. *Becker*, supra, at 1206.

### 2. Section 2–725: The Statute of Limitations

The parties agree that Section 2–725 of the Uniform Commercial Code (Code), 12 A.P.S. § 2–725, is the relevant limitation provision to be applied here. It states [4] that an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

---

**2.** See n. 6, infra.

**3.** Defendant contends that it must have shipped the pajamas in question to Lit Brothers prior to June 6, 1971. For support, Her Majesty points to its records and those of Lit Brothers which indicate that there were no shipments of pajamas in 1971 prior to October 12, 1971, the date of the accident and, thus, the pajamas were delivered to Lit Brothers sometime in 1970.

Plaintiffs, on the other hand, have argued that the pajamas were shipped sometime between June and September, 1971. This contention is based on plaintiffs' identification of the pajama style as Style 47177, a type manufactured during the time frame from April to June, 1971, and shipped to retailers in the summer of 1971.

Based upon this dispute, I expressed my hesitation in considering a summary judgment motion because of what appeared to be a material issue of fact. Defendant then moved under F.R.Civ.P. 42(b) to sever the factual issue from the statute of limitations question. Plaintiffs, however, withdrew the affidavit which had created the factual dispute and agreed that the motion for summary judgment should be decided purely on the legal question.

**4.** In relevant part, Section 2–725 provides:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A *breach of warranty occurs when tender of delivery is made*, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered (emphasis added).

It is Her Majesty's position that under the clear language of Section 2–725(2), the limitation period as to any seller commences when he tenders delivery of the goods to his immediate purchaser, the retailer, and the four-year period would have expired prior to June, 1975. Plaintiffs' position is there could be no tender of delivery as to them until they had purchased the merchandise, and, under their computations, the four-year period would have expired in September, 1975.

Although the Code is silent on the issue, defendant asserts that one purpose of the limitation is to enable firms to destroy their records four years after a commercial sale "without fear of being unable to defend against liabilities subsequently asserted." *Engelman v. Eastern Light Co., Inc.*, 30 Pa.D. & C.2d 38, 45 (1962). To some extent, this is supported by the comments of the National Conference of Commissioners on Uniform State Laws and The American Law Institute:

> This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period.

If the limitation period was held to begin only upon sale by the retailer to the ultimate consumer, defendant argues it would not run for 25 years if the retailer were not able to sell the product for 21 years. Similarly, with respect to a machine which might be sold and resold a number of times over a great number of years, the manufacturer's warranty liability would be extended for even longer periods of time. Conversely, if defendant's reasoning were adopted, a calculation of the statute of limitations from the date of delivery to the retailer could bar an injured consumer before his cause of action even existed. For example, a sale and an injury could take place four years and one day after delivery of the product to the retailer. While the customer could maintain an action against the retail establishment, he would be foreclosed from bringing a breach of warranty claim against the manufacturer.[5]

The initial step in my inquiry as to the probable reaction of Pennsylvania courts to this issue must be an examination of the development of warranty law in this state and the courts' recognition of the economic reality in cases involving manufacturers and users of allegedly defective products. Thereafter, I shall address those cases from other jurisdictions which have impliedly considered this issue.

### 3. *The Pennsylvania law*

Prior to the adoption of the Code in Pennsylvania, actions to recover for personal injuries, whether in contract or in tort, were governed by the two-year trespass statute of limitations, but the action did not accrue until an injury was sustained. *Foley v. Pittsburgh Des Moines Co.*, 363 Pa. 1, 68 A.2d 517 (1949); *Jones v. Boggs & Buhl*, 355 Pa. 242, 49 A.2d 379 (1946). These clearly decided precedents were questioned after adoption of the Code and until the Pennsylvania Supreme Court's decisions in *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 197 A.2d 612 (1964), and *Rufo v. Bastian-Blessing Cc.*, 417 Pa. 107, 207 A.2d 823 (1965). In *Gardiner*, plaintiffs, injured by an alleged defective gas conduit installed by defendant, sued in assumpsit two years and eight days after the alleged injury, but within four years from the date of delivery. The court concluded that "a personal injury claim based upon a breach of warranty is a

---

5. Judge Frank, in his dissenting opinion in *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir. 1952), cited with approval in *Vescio v. Chrysler Corp.*, 125 P.L.J. 353 (1977), described the "Alice in Wonderland" effect of this result as follows:

> Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i. e., before a judicial remedy is available to the plaintiff.

distinct claim from a personal injury claim based on negligence," 413 Pa. at 419, 197 A.2d at 614, and in the interest of uniformity under the Code, personal injury claims in an assumpsit action would be limited by the four-year provision of Section 2–725. One year later, in *Rufo*, the court was faced with a suit in assumpsit for personal injuries which had been filed more than four years after the date of delivery. Plaintiff's argument that the date of injury should trigger the limitation period was rejected, but the four-year rule was followed. Under the court's reasoning, the latest time the cause of action could accrue was when the plaintiff took delivery of the allegedly defective product. Since then, a number of state and federal court decisions have referred to the four-year period.[6]

The only state court case that has even remotely considered whether the retail or wholesale date controls is *Rufo v. Bastian-Blessing Co.*, supra, where the court intimated that it is the retail sale which provides the significant date. Rufo had bought a refilled, portable cylinder of liquefied gas from Martin in March, 1956. Defendant, Bastian-Blessing, had manufactured a valve which was connected to the cylinder. On December 8, 1957, plaintiff was injured in an explosion, caused by gas which escaped from the valve and caught fire. Alleging that defendant had violated an implied warranty of fitness, Rufo brought suit on July 12, 1960. In ruling

that the action was barred by the statute of limitations, the court held:

> Applying the statute, the latest time that the alleged breaches of implied warranties could have occurred and, therefore, the latest time that the cause could have accrued was *when Rufo took delivery of the allegedly defective cylinder in March of 1956.* Because the complaint was filed more than four years later, in August of 1960, it was too late (emphasis added). 417 Pa. at 113, 207 A.2d at 826.

There was no mention of the date defendant sold the valve to Martin nor was there any indication that Martin was a retailer. However, it certainly can be strongly argued that if the date of sale from defendant to Martin was crucial, the court would have revealed it and measured the statute of limitations from that date. Admittedly, however, *Rufo* is less than conclusive.

The federal district court cases from Pennsylvania that have bordered on this issue are not very helpful. In *Peeke v. Penn Central Transportation Co.*, 403 F.Supp. 70 (E.D.Pa.1975), Judge Becker faced a different question, i. e., whether the accrual date was the date of injury. But, in discussing *Rufo,* he concluded:

> The court held plaintiff's claim barred because the accrual date of § 2–725's four year limit was the date of the breach; that is, of tender of delivery; and certainly *no later than the date of resale by the retailer* (emphasis added). *Id.* at 72.

---

**6.** See e. g., *Peeke v. Penn Central Transportation Co., Inc.*, 403 F.Supp. 70, 72 (E.D.Pa.1975), aff'd 538 F.2d 320 (3d Cir. 1976); *Hoffman v. A. B. Chance Co.*, 339 F.Supp. 1385, 1387 (M.D. Pa.1972); *Hoeflich v. William S. Merrell Company*, 288 F.Supp. 659, 660 (E.D.Pa.1968); *Sykes v. Southeastern Pennsylvania Transportation Co.*, 225 Pa.Super. 69, 72 n. 1, 310 A.2d 277 (1973); *Salvador v. Atlantic Steel Boiler Co.*, 224 Pa.Super. 377, 386, 307 A.2d 398 (1973), aff'd 457 Pa. 24, 319 A.2d 903 (1974); *Engelman v. Eastern Light Co.*, supra, 30 Pa.D. & C.2d at 44.

Defendant fails to cite a single case in support of its position that Pennsylvania should return to the two-year statute of limitations. Rather, it relies on Professor Murray's article, *Products Liability—Another Word*, 35 U.Pitt.L. Rev. 255 (1973), wherein he asserts that the Pennsylvania legislature did not intend to fit personal injury actions within a "contractual" statute of limitations and, because of the adoption and expansion of strict liability under Section 402A of the Restatement of Torts, Second, there no longer is any need to handle personal injury claims under a warranty theory. Defendant argues that if the Pennsylvania Supreme Court were made aware of Professor Murray's article, it would jettison its holding in *Gardiner* and apply the two-year statute. However, the court has been made aware of this article. In affirming the Superior Court's decision in *Salvador*, supra, the court cited Professor Murray, 457 Pa. at 28 n. 9, 319 A.2d 903, while at the same time following the lower court's application of a four-year statute of limitations. For this reason, I cannot accept defendant's contention that a two-year rule should govern.

*Hoffman v. A. B. Chance Co.,* 339 F.Supp. 1385 (M.D.Pa.1972), involved an action where an employee sought to recover for injuries he sustained when he fell from a hydraulic aerial platform installed on a truck in order to facilitate work on overhead electrical lines. The truck was equipped with a locking device sold and installed by A. B. Chance Co., but manufactured by Minnesota Automotive, Inc. This device allegedly malfunctioned, the truck rolled forward, and plaintiff fell. Suit was brought against defendant for breach of warranty five years and ten months after defendant had delivered the locking system to plaintiff's employer. The action was held barred by Section 2–725. While this decision might appear at first glance to favor the position argued here by Her Majesty, *Hoffman* only involved a seller's warranty, not that of a manufacturer and there was no second purchase by an "ultimate" consumer.[7] Pennsylvania's public policy appears much stronger than *Hoffman* reveals. Eliminating the requirement of vertical privity in breach of warranty actions, the Supreme Court stated:

> Courts and scholars alike have recognized that the typical consumer does not deal at arm's length with the party whose product he buys. Rather, he buys from a retail merchant who is usually little more than an economic conduit. It is not the merchant who has defectively manufactured the product. Nor is it usually the merchant who advertises the product on such a large scale as to attract consumers. We have in our society literally scores of large, financially responsible manufacturers who place their wares in the stream of commerce not only with the realization, but with the avowed purpose, that these goods will find their way into the hands of the consumer. Only the consumer will use the products; and only the consumer will be injured by them should they prove defective. Yet the law

in Pennsylvania continued to permit these manufacturers to escape contractual liability for harm caused consumers by defective merchandise simply because the manufacturer technically did not sell directly to the consumer. There was no privity of contract between them. No one denied the existence of absolute liability under the code for breach of implied warranty. But this warranty ran not to the injured party, but rather to the middle man who merely sold to the injured party, thus ignoring commercial reality and encouraging multiplicity of litigation (emphasis in original omitted) (footnotes omitted). *Kassab v. Central Soya,* 432 Pa. 217, 227–28, 246 A.2d 848, 853 (1968).

Six years later, the court did away with horizontal privity. Justice Roberts, writing for a unanimous court in *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974) concluded:

> Our Courts have determined that a manufacturer by marketing and advertising his product impliedly represents that it is safe for its intended use. We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect.

Today's business world is no longer one of direct contact. It is, instead, based on advertising. Manufacturers make extensive use of newspapers, periodicals, radio, and television to call attention to the qualities of their products. This advertising is directed at the ultimate consumer. In addition, many products are shipped in sealed packages and the retailer is, in reality, merely a conduit through which the manufacturer distributes his goods. *Klages v. General Ordnance Equipment Corp.,* 240 Pa. Super. 356, 364–65, 367 A.2d 304, 308–09

---

**7.** See also *Owens v. Patent Scaffolding Co.—Division of Harsco,* 77 Misc.2d 992, 354 N.Y. S.2d 778, 14 UCC Rep. 610 (1974), which involved a plaintiff who sustained injuries when he fell from malfunctioning scaffolding equipment leased by defendant to plaintiff's employ-

er. Suit was started four years and seven days after the date the equipment was delivered. The court, looking to the date of delivery, barred the action under Section 2–725(1). Like *Hoffman,* however, no second purchase was involved.

(1976). Moreover, in *Knapp v. North American Rockwell Corp.,* 506 F.2d 361 (3d Cir. 1974), cert. denied 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975), the Court of Appeals discussed the significance Pennsylvania courts give to policy considerations when determining the scope of a manufacturer's liability. There, the court treated a sale of assets as a merger for the purpose of imposing tort liability on the purchasing corporation for injuries caused by a defective machine manufactured by the selling corporation. In reaching its decision, the court found:

> If we are to follow the philosophy of the Pennsylvania courts that questions of an injured party's right to seek recovery are to be resolved by an analysis of public policy considerations rather than by a mere procrustean application of formalities, we must . . . evaluate the public policy implications of that determination.
>
> In resolving, where the burden of a loss should be imposed, the Pennsylvania Supreme Court has considered which of the two parties is better able to spread the loss. *Id.* at 369.[8]

While the policy espoused in these cases must be tempered by the realization that the courts were dealing with decidedly different questions of law from the one at issue here, I believe that if confronted with it a Pennsylvania court would adopt a rule of law that would best spread the risk of loss and protect the consumer.[9] Having adopted a four-year statute of limitations, eliminated the requirements of vertical and horizontal privity in breach of warranty actions, and described the manufacturer as a guarantor of his product's safety, *Salvador v. Atlantic Steel Boiler Co.,* supra, 457 Pa. at 32, 319 A.2d at 907, Pennsylvania, in my judgment, would more likely adopt plaintiffs' theory and hold the statute of limitations runs from the retail sale date.

### 4. *Other Jurisdictions*

A survey of other jurisdictions has revealed no case which has directly addressed and answered this question, although some courts impliedly lean in plaintiff's direction. For instance, in *Raymond v. Eli Lilly & Co.,* 412 F.Supp. 1392 (D.N.H.1976), aff'd 556 F.2d 628 (1st Cir. 1977), plaintiff brought an action for personal injuries against the manufacturer of an oral contraceptive for breach of implied warranty. Suit was filed February 28, 1975. In barring plaintiff's claim on this ground the court concluded:

> NH RSA 382–A:2–725(1) establishes a four year statute of limitations for any action based upon a contract for sale. The statute begins to run from the time a cause of action accrues, which is when the breach occurs. The breach of warranty occurs when the tender of delivery is made regardless of the aggrieved party's knowledge of the breach. NH RSA 382–A:2–725(2). *Plaintiff's last purchase of C–Quens* [the contraceptive] *was on or about May 20, 1968, more than four years prior to the commencement of her action. She is, therefore, barred from pursuing her breach of warranty claim against defendant by NH RSA 382–A:2–725(1)* (emphasis added). *Id.* at 1403.

Presumably plaintiff would have filled prescriptions for the drug at a pharmacy and not directly from the manufacturer. Thus,

---

8. The court also discussed *Kassab v. Central Soya,* supra, and *Salvador v. Atlantic Steel Boiler Co.,* supra, and found that "the reasoning utilized by the Supreme Court in those cases dealt with the economic reality of the relationship between manufacturers and the users of the allegedly defective products." 506 F.2d at 367 n. 21.

9. The Third Circuit recognized Pennsylvania's concern for the individual consumer in *Pritchard v. Liggett & Myers Tobacco Company,* 295 F.2d 292, 299 (3d Cir. 1961):

> In Pennsylvania, one who supplies a product to another and knows or should know that the foreseeable use is dangerous to human life unless certain precautions are taken, and who realizes or should realize that the user will not in the exercise of reasonable vigilance recognize the danger, is under a duty to warn the user of such consequences and to advise proper precautions.

This case is not controlling here because it dealt with the notice provisions of the Uniform Sales Act which has been repealed and replaced by the Uniform Commercial Code.

the court focused on the retail sale date as the date which would trigger the statute of limitations.

Along the same lines is *Berry v. G. D. Searle & Co.,* 56 Ill.2d 548, 309 N.E.2d 550 (1974). There, a woman and her husband brought suit against the manufacturer of an oral contraceptive for a stroke and paralysis she sustained. The record showed that contraceptives had been sold to wife plaintiff on May 29, 1965, by the Planned Parenthood Association of Chicago.[10] Suit was started on May 29, 1969, and defendant moved to dismiss the action on the ground that the statute of limitations had run. In rejecting defendant's argument that suit should have been started on or before May 28, 1969, the court found that "if the evidence would indicate that the drug causing the injury was delivered to the plaintiff on May 29, 1965, an action based on liability under the Code commenced four years thereafter was timely filed." *Id.* at 557, 309 N.E.2d at 555. Unfortunately, for the purposes of this discussion, Searle did not argue that the statute should begin to run from the date of its delivery to Planned Parenthood, since there is a strong likelihood that the wholesale sale took place more than four years prior to the start of the suit. However, it is clear that the court concentrated on the date of retail sale.

One other decision merits attention. In *Waldron v. Armstrong Rubber Co.,* 64 Mich. App. 626, 236 N.W. 722 (1975), plaintiff had brought an action for personal injuries based on alleged defects in a tire he purchased from Sears, Roebuck & Company on August 27, 1968. Suit was started against the retailer, Sears, and the manufacturer, Armstrong Rubber, on July 6, 1972. The Michigan Court of Appeals found that the action was timely brought under Section 2–725(2) and concluded that August 27, 1968, was the date of the breach of warranty and, therefore, that plaintiff's cause of action accrued as of that time. Once again, it is obvious that the delivery of the tire to Sears from Armstrong Rubber would have taken place sometime prior to August 27, 1968, but the court looked exclusively to the retail date.[11]

### 5. Conclusion

It must be recognized that the Code gives no clear answer to the question posed here, for it does not specify to whom tender of delivery must be made in order to commence the four-year statute of limitations. In addition, Pennsylvania has not decided nor been faced with the issue. Therefore it has been necessary to examine Pennsylvania as well as other state and federal court decisions in order to determine how a Pennsylvania court might resolve the matter. Since only one case, *Rufo v. Bastian-Blessing Co.,* supra, has come remotely close to considering the question, the policy formulated by Pennsylvania courts has been most instructive. In abolishing the doctrines of vertical and horizontal privity, the Supreme Court placed a great deal of reliance on

---

**10.** Planned Parenthood argued that it was primarily a service organization, i. e., to give birth control advice, and that its dispensation of birth control devices was merely an adjunct to performing that service. It asserted, therefore, that it was not engaged in selling these items. The court disagreed and found that the association was a seller. Thus, the case involved two sales, one from Searle to Planned Parenthood and one from Planned Parenthood to plaintiffs, similar to the situation posed here.

**11.** Two other cases have been cited by plaintiffs in support of their position *Hoeflich v. William S. Merrell Company,* 288 F.Supp. 659 (E.D.Pa.1968); (Troutman, J.); and *Layman v. Keller Ladders, Inc.,* 224 Tenn. 396, 455 S.W.2d 594 (1970). These are notable only in that in discussing the timeliness of the actions, the courts made no mention of the date of retail sale.

The only other case which deserves mention is *Schmitz v. DiNicola,* 28 Conn.Supp. 385, 264 A.2d 14 (1969), where a customer filed an action against a restaurant proprietor for hepatitis he allegedly contracted by consuming raw clams at the restaurant. Defendant attempted to implead the business which had sold him the clams, but the motion was refused because it was not filed within four years after the cause of action had accrued. The court did not address which date would trigger the statute of limitations; it merely held that, even adopting the most favorable date for the defendant, the date plaintiff consumed the clams, the third-party action would be outside the four-year period.

today's business world and the economic realities of marketing goods in our society. It does not seem conceivable that the court which looked to the consumer, and not the middleman, as the party to be protected, *Kassab v. Central Soya,* supra, and which termed the manufacturer the guarantor of his product's safety, *Salvador v. Atlantic Steel Boiler Co.,* supra, would adopt an interpretation which might allow a statute of limitations to run before a consumer ever received the goods.

Moreover, it is important to remember the purpose for which warranties are primarily made, the protection of the ultimate user or consumer. The benefit of such warranties to the retail merchant are tangential—they provide a means to recoup losses suffered from the sale of a defective product. Therefore, the warranty should begin to run when the ultimate purchaser receives the goods, not when a merchant obtains the goods for resale.

For these reasons, I find that the statute of limitations began to run when plaintiffs purchased the pajamas. Since the suit was commenced within four years from the date of the retail sale, the action is not barred by Section 2–725(1) of the Code.[12] Accordingly, defendant's motion for summary judgment must be denied.

---

12. Because I have found in plaintiffs' favor, I need not decide whether defendant's warranty extended to future performance and, thus, whether the statute of limitations began to run as of the date of the accident. See Section 2–275(2).