### Richmond

# W. J. Rapp Co., Inc.

## v.

# Whitlock Equipment Corp., et al.

June 12, 1981.

Record No. 781813.

Present: All the Justices.

*E. Kenneth Day (Robert L. Simpson, Jr.; Day, Summs, Epps & Simpson, P.C., on briefs), for appellant.*

*Roy M. Terry, Jr.; Philip S. Marstiller (Rosewell Page, III; Evan A. Burkholder; Ralph L. Axselle, Jr.; John E. Coffey; McGuire, Woods & Battle; Wells, Morano, Axselle & Johnson; Thomas & Sewell, P.C., on briefs), for appellees.*

HARRISON, J., delivered the opinion of the Court.

In this case we decide the applicable statute of limitations in a products liability warranty action between a plaintiff-consumer and the defendants-retailer-manufacturers. Specifically the issue is whether the trial court correctly ruled that Virginia Code § 8-13,[1]

---

[1] The General Assembly consolidated the limitations of Code §§ 8-13, -17, and -23 in Code § 8.01-246. Acts 1977 c. 617. Code § 8.01-246(4) provides that actions founded

which provided a three-year limitation, is applicable, rather than Code § 8.2-725, which provides a four-year limitation.

On April 25, 1973, W. J. Rapp Co., Inc., purchased from Whitlock Equipment Corporation, a Richmond retailer, a mobile concrete conveyor known as a Symons Kari-Krete Placer. Rapp was engaged in the construction business in Richmond and specialized in concrete placement and forming. The placer, also referred to as conveyor or vehicle, was self-propelled and consisted of a telescoping conveyor system designed to place, pour, or convey concrete or other aggregate fills in hard-to-reach pour areas. The conveyor equipment was manufactured by the Mulkey Company, a division of Symons Corp. (Mulkey-Symons) and was mounted by that company upon an International Harvester Company truck chassis which it purchased directly from International.

Rapp conducted extensive negotiations with representatives of both Whitlock and Mulkey-Symons before purchasing the equipment from Whitlock. Delivery was accepted by Rapp on May 2, 1973, from Mulkey-Symons at the latter's plant in Lees Summit, Mo. Prior to taking control of the placer, Mr. Rapp attended a school conducted by Mulkey-Symons to learn how to operate the equipment.

Whitlock was billed for the placer by Mulkey-Symons. The invoice shows that the sale was a net sale by the manufacturer to the retailer for $13,185. W. J. Rapp testified that he made the necessary financial arrangements with General Electric Credit Corporation on or prior to the time that he took delivery of the equipment. Whitlock sold the placer to Rapp for $16,440. Payment to Whitlock was made by General Electric Credit Corporation and was evidenced by its check, dated May 7, 1973. On the face thereof is written "Proceeds of invoice no. 2038 dated 4/25/73 for Symons Kari-Krete Placer 360 Degree Boom sold to W. J. Rapp Company, Incorporated."

The invoice referred to in General Electric's check to Whitlock describes the placer, the amount paid Whitlock, and recites: "Equipment Accepted and Invoice Approved for Payment [and signed] W. J. Rapp Co., Inc., by W. J. Rapp, Jr." At the same time General Electric and Rapp executed a "Retail Installment Contract-Lease" describing the conveyor and showing that the

"upon any unwritten contract, express or implied, [shall be brought] within three years [after the cause of action shall have accrued]."

transaction ($16,440 plus $10 filing fee) was being financed by General Electric with a "Leasing Charge (FINANCE CHARGE)" of $3,945.60, for a total of $20,395.60. However, Rapp was also required to pay "Advance Rental" of $1,699.60, thereby making the total finance charge $5,645.20. It was agreed that the $20,395.60 was to be repaid by Rapp in 47 consecutive monthly installments of $424.90 and a final installment of $425.30. The financing statement filed pursuant to the Uniform Commercial Code with the State Corporation Commission shows Rapp to be the debtor and General Electric the secured party.

The placer was titled by the Virginia Division of Motor Vehicles on May 7, 1973, and the registered owner was listed on the face of the title as W. J. Rapp Co., Inc., with General Electric Credit Corporation as lienor. The application for certificate of title, filed by Rapp with the Division of Motor Vehicles at the time of the transaction, recites that it was purchased by W. J. Rapp Co., Inc., from Whitlock Equipment Corp. on April 25, 1973, and that the sales price was $20,395.60.

In June 1973, the placer broke down during normal highway operations. Various efforts were made to repair the vehicle without success. The record reflects that certain repairs were performed by the Richmond International Harvester dealership, at the direction of Mulkey-Symons, at which time dual rear wheels were added to the vehicle. It appears that the placer has not been used since September 1974.

Defendants argue that Whitlock purchased the conveyor from Mulkey-Symons and resold it to General Electric Credit Corporation. They contend that Rapp, in turn, purchased it under a lease-sale-agreement from General Electric. We disagree. We find no evidence in the record to support this argument. The vehicle or placer involved is a highly specialized piece of construction equipment which Rapp hoped to use to advantage in its construction business. All negotiations incident to the purchase of the equipment were conducted by Rapp with Whitlock and representatives of Mulkey-Symons. There was no agreement, contract of sale, or transfer of title to the vehicle from either Whitlock or Mulkey-Symons to General Electric. The "on-the-road" vehicle was sold to Rapp. General Electric had no dealings with any of the parties other than Rapp. Its sole connection with the transaction was to finance Rapp's purchase. The fact that it elected to require the debt that Rapp owed it to be secured by an install-

ment-contract-lease and by reservation of lien on title, rather than by some other method, did not thereby convert this lender into a consumer-purchaser. It remained a lender of money which received $5,645.20 from Rapp for financing the purchase of the placer from Whitlock. General Electric has been paid its debt, has marked the retail installment contract paid, and has marked its lien on the placer satisfied. General Electric is not a party to this action. We therefore find that Rapp was the buyer of the placer, Whitlock its seller, Mulkey-Symons its manufacturer, and International Harvester the manufacturer of a component part of the equipment.

Rapp filed its action against the defendants, Whitlock Equipment Corporation, the Mulkey Company, the Symons Corporation, and the International Harvester Company, more than three but less than four years after its cause of action for alleged breach of warranty accrued. It contends that the four-year statute of limitations set forth in Code § 8.2-725 (U.C.C. § 2-725) applies. The defendants argue that the three-year statute for a breach of contract not in writing, embodied in Code § 8-13 (now § 8.01-246), controls.

Code § 8.2-318 (U.C.C. § 2-318) abolishes lack of privity as a defense in actions against manufacturers or sellers of goods. It provides:

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods; however, this section shall not be construed to affect any litigation pending on June twenty-nine, nineteen hundred sixty-two. (Code 1950 (Suppl.), § 8-654.3; 1962, c. 476; 1964, c. 219.)

Code § 8.2-725 (U.C.C. § 2-725) is the statute of limitations in contracts for sale. In pertinent part it provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce

the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The defendants argue that Virginia's "anti-privity statute" has no application here. They say that Code § 8.2-318 is designed solely for the purpose of abolishing privity of contract as a substantive defense to an action for breach of warranty, and that it is irrelevant where a procedural determination has to be made of the proper statute of limitations to be applied. Continuing, the defendants, or some of them, assert that no privity exists between Rapp and any of the defendants. They rationalize this position by making a distinction between the passage of title under Article II of the U.C.C. and a certificate of title obtained from the Division of Motor Vehicles. Specifically, Whitlock says that the title to the placer passed from Mulkey-Symons to Whitlock, from Whitlock to General Electric Credit Corporation, and then to Rapp. Therefore, Whitlock argues that Rapp was never a buyer from it or any other defendant.

Mulkey-Symons advances very much the same argument as Whitlock and claims that Code § 8.2-725 has no application in an action by a consumer against a remote manufacturer. It says that the section contemplates direct contractual relations between a buyer and a seller. It agrees that Virginia's anti-privity statute gives a consumer a direct cause of action against a remote manufacturer, but nevertheless claims the effective limitation period is that provided by Code § 8-13, now § 8.01-246, rather than Code § 8.2-725.

International Harvester contends the issue is which limitation period applies in a consumer's warranty action against a remote manufacturer. It argues that the drafters of Article II of the U.C.C. did not anticipate actions against remote manufacturers, and that consequently § 8.2-725 was not designed or intended to reach International Harvester.

The contract between Rapp and Whitlock was a routine contract for sale between a buyer and a seller of goods. Rapp first learned about the placer from literature obtained from Whitlock and purchased the placer through this retailer-distributor. Whitlock obtained the assistance of a representative of the manufacturer to effect the sale and then placed an order for the placer with Mulkey-Symons. Because the equipment was a complicated piece of machinery, the manufacturer instructed purchasers thereof in its operation. Rapp took possession of the equipment on the manufacturer's premises and drove the vehicle back to Richmond. Arrangements for financing its purchase were made by Rapp with General Electric, and Rapp's loan was secured in the manner required by the lender. At no time did the credit corporation play any role in the transaction except that of a lender of money with the equipment purchased thereby as security for its repayment.

We express no opinion here on whether a breach of warranty occurred. If there has been a breach of warranty in this case, it occurred when the manufacturer made delivery of the placer to Rapp, a customer of Whitlock, on May 2, 1973. Code § 8.2-725 provides "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made. . . ." This Code section also provides that an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. Plaintiff's action was commenced on April 22, 1977, within the four-year limitation period.

In support of their conclusions defendants cite numerous out-of-state cases[2] which we deem unnecessary to review for the reason that none is directly in point or involves statutes similar to Virginia's broad anti-privity statute or other enactments by the General Assembly of Virginia with which we are concerned in this case.

We conclude that the contract of sale involved was one between a seller, Whitlock, and a buyer, Rapp, parties in privity, and was

---

[2] *Insurance Co. of North America* v. *General Elec. Co.,* 376 F. Supp. 638 (W.D. Va. 1974); *Heavner* v. *Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973); *Rosenau* v. *City of New Brunswick,* 51 N.J. 130, 238 A.2d 169 (1968); *Romano* v. *Westinghouse Electric Co.,* 114 R.I. 451, 336 A.2d 555 (1975); *Kelly* v. *Ford Motor Company,* 110 R.I. 83, 290 A.2d 607 (1972).

within the meaning of the Uniform Commercial Code. Code § 8.2-106(1). Mulkey-Symons was the manufacturer of the placer, the subject of the contract of sale. Rapp, Inc., was the "person" which Mulkey-Symons might reasonably have expected to use and consume or be affected by the equipment manufactured. Code § 8.2-318. We therefore hold that as to Whitlock and Mulkey-Symons the applicable statute of limitations to plaintiff's action is four years. Code § 8.2-725.

Whether Rapp, Inc., was a "person" which International Harvester "might reasonably be expected to use, consume, or be affected by" the chassis it sold Mulkey-Symons is a factual matter which is not before us. The sole issue as to International, as it is as to other defendants, is the applicable statute of limitations. It has heretofore been pointed out that the position of International Harvester is that of a supplier of a component part of an article or goods (placer) to be manufactured. The fact that the part supplied was the chassis of a vehicle rather than a smaller component of the placer is immaterial. International Harvester remained the remote manufacturer of a component part of the unfinished product. Although the Richmond branch of International Harvester may have, at Mulkey-Symons' request, made certain repairs to the placer in an effort to correct any defect in the machine, this action did not operate to convert this remote supplier of parts to a seller or manufacturer within the contemplation of the Uniform Commercial Code. Neither did it operate to toll any limitation period that applies to plaintiff's action against International Harvester.

We think it clear that International Harvester was not a party to a contract of sale within the meaning or purview of the Uniform Commercial Code. "A sale consists in the passing of title from the seller to the buyer for a price." Code § 8.2-106(1). International Harvester was not privy to the contract of sale between Rapp and Whitlock, or the contract of sale between Whitlock and its supplier-manufacturer, Mulkey-Symons. Rapp concedes it did not rely on any representations by International Harvester in connection with its purchase of the placer. International Harvester was never in any commercial or contractual relationship with either Rapp or Whitlock. Mulkey-Symons was in such a relationship and hence its involvement in a Uniform Commercial Code transaction to which Code § 8.01-246 made the four-year limitation provided in Code § 8.2-725 applicable.

While Code § 8.2-318 abolishes lack of privity as a defense against manufacturers or sellers of goods, this statute does not change the three-year limitation period except "as to any action [founded upon contract] to which Code § 8.2-725 of the Uniform Commercial Code is applicable," *i.e.*, as to any action for a breach of "contract of sale" between the "parties" described in the Uniform Commercial Code. (Code § 8.01-246)[3] Because International Harvester is a remote manufacturer who is not a party to the contract of sale between the buyer and seller involved here, the three-year limitation applies to it. The rationale for this holding is provided by the Michigan Supreme Court in *Southgate Comm. School Dist.* v. *West Side Construction Co.*, 399 Mich. 72, 78-79, 247 N.W.2d 884, 887 (1976), where the court said:

> By its terms, UCC § 2-725 applies only to an "action for breach of any contract for sale," and was not meant to apply to actions between consumers and manufacturers who were never in any commercial relationship or setting. For example, the parties to the contract may agree under UCC § 2-725(1) to reduce the limitations period to not less than one year, but such an agreement could not bind one not privy to the parties' agreement and whose cause of action does not arise therefrom. Furthermore, under subsection 2, a cause of action for breach generally accrues when tender of delivery is made. If applicable to the consumer's products liability action against a remote manufacturer, the statute could run before all elements of plaintiff's claim were present. For these reasons, we hold that application by the lower courts of UCC § 2-725 to bar plaintiff's action was error.

Accordingly, we reverse the action of the court below in sustaining the pleas of the statute of limitations filed by defendants Whitlock and Mulkey-Symons and affirm the trial court's action

---

[3] The final paragraph of § 8.01-246, which concerns the limitation period for personal actions based on contracts, provides the three-year limitation period for actions upon any unwritten contract, expressed or implied, and reads as follows:

Provided that as to any action to which § 8.2-725 of the Uniform Commercial Code is applicable, that section shall be controlling except that in products liability actions for injury to person and for injury to property, other than the property subject to contract, the limitation prescribed in § 8.01-243 shall apply. (Code 1950, §§ 8-13, 8-17, 8-23; 1964, c. 219; 1966, c. 118; 1977, c. 617.)

(It is not claimed that this case comes within the exception provided in that section.)

in sustaining the plea of the statute of limitations filed by International Harvester. The case is remanded for such further proceedings as are consistent with the views expressed in this opinion.

*Affirmed in part, reversed in part, and remanded.*