Meyer, J.
(dissenting). Prior to 1975 Uniform Commercial Code § 2-318 authorized an action by one injured in person by breach of warranty but limited a seller’s warranty liability to “his buyer,” members of the buyer’s family or household and guests in the buyer’s home. As thus written the provision *413 required both vertical and horizontal privity. Vertically the warranty ran only from the seller to the immediate buyer from him; horizontally it included not only the buyer but his family, household and guests.
The amendment made by chapter 774 of the Laws of 1975 removed the words “who is in the family or household of his buyer or who is a guest in his home”. Its effect was to extend the warranties provided for by the UCC, not only horizontally but vertically, for after amendment the section contained no reference to the buyer and made the seller’s warranty run to “any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.”[1] The amended section, therefore, broadened its coverage not only horizontally to encompass bystanders of all types, but also vertically to include a manufacturer whose product is distributed through a dealer to the consumer, for it is reasonable for such a manufacturer to expect that the purchaser from a dealer in his product may use, consume or be affected by the product and be injured in his or her person. That such was the legislative intent is supported, if support be needed, by the memorandum of the Assembly sponsor of the amendatory bill, which stated its purposes as “to extend more intelligently the warranty provided to a purchaser of goods under the UCC” (1975 NY Legis Ann 110).
The majority accepts the premise that despite the absence of privity a manufacturer is liable to a purchaser from a dealer in the manufacturer’s product for a breach of warranty resulting in injury to the purchaser,[2] but nevertheless concludes that the four-year limitations period established by UCC 2-725 begins upon delivery of the product by the manufacturer to the dealer rather than with the dealer’s delivery to the purchaser. For a number of reasons I cannot accept that restrictive reading of the phrase “tender of delivery” used in UCC 2-725 and, therefore, respectfully dissent.
Primary among those reasons is the misconception involved in the majority’s reasoning (majority opn, at p 411) that the 1975 amendment was not necessary because it had been previously held in Codling v Paglia (32 NY2d 330) that a consumer had a *414 cause of action in strict product liability against a manufacturer. The Legislature is presumed to have been áware of the Codling holding (Transit Commn. v Long Is. R. R. Co., 253 NY 345,355) and to have intended in enacting the 1975 amendment to effect some change in existing law and accomplish some useful purpose (Mabie v Fuller, 255 NY 194, 201). With that knowledge and intent and the knowledge that UCC 2-725 imposed a limitation period of four years on an action for breach of warranty measured from “tender of delivery,” it amended UCC 2-318 to provide a cause of action in warranty against a manufacturer running to the consumer. The purpose of the amendment, and the change it accomplished, was the addition to the consumer’s rights against the manufacturer of a new cause of action dependent not upon proof of negligence, as was Codling’s strict liability action, but upon proof of unfitness for intended purpose, or other breach of warranty.
But although amendment of section 2-318 was necessary to broaden consumer rights, amendment of section 2-725 was not. This follows from the facts that there cannot be a warran ty running from manufacturer to consumer until there is a consumer and that in the nature of the transaction there is no consumer until delivery by the dealer-retailer of the product to a particular purchaser. Thus the “tender of delivery” which brings into operation the manufacturer’s warranty to the consumer is from the dealer to the purchaser, not from the manufacturer i;o the dealer.
There is nothing foreign about such a concept. Not only does it underlie the strict liability action recognized in Codling v Paglia (32 NY2d, at p 339, supra), but also in Martin v Dierck Equip. Co. (43 NY2d 583), relied on by the majority, we held that a warranty cause of action arose in Virginia where the injuiy occurred rather than in New York where the product was delivered. The reasoning on which that holding was based was that “if a third party chooses to sue in ‘warranty’ * * * he may not nevertheless by asserting that the cause of action arose at the time of the manufacturer’s tender of delivery contend that his cause of action ‘accrued’ before in fact it had”[3] (id., at p 590 [emphasis supplied]) and that, “No contract of sale, without more, made between plaintiff’s employer and the manufacturer and distributor of the forklift could create any liability to plaintiff [citation omitted]. Plaintiff possessed no cause of action, in tort or in *415 contract, any where in the world until he was injured in Virginia” (id., at p 591). That the plaintiff in Martin was a bystander, whereas the present plaintiff is a purchaser from the dealer, furnishes no basis for distinction, for section 2-318, as amended, replaced the prior requirement of privity, whether horizontal or vertical, with a statutory right of action which could not come into existence until sale by the dealer to the purchaser. To hold otherwise, said the Martin majority, would be to repeat “the all but inconceivable result reached in Mendel v Pittsburgh Plate Glass Co. (25 NY2d 340), overruled in Victor son v Bock Laundry Mach. Co. (37 NY2d 395) * * * a rule that would have barred a plaintiff’s cause of action before it ever came into existence.”[4] (43 NY2d, at pp 590, 591, supra.)
The majority’s citation of Doyle v Happy Tumbler Wash-O-Mat (90 AD2d 366) suggests that the rationale for its holding is its agreement with Doyle’s reasoning that (at p 370) “ ‘tender of delivery’ * * * is more readily applicable to commercial transactions between a seller and buyer.” But Doyle’s restrictive reading of “tender of delivery” not only makes it possible that the newly expanded cause of action could be barred by limitations before it came into existence, a result we should not lightly infer was intended by the Legislature, but also wholly overlooks the fact that the amended section 2-318 is a part of the Uniform Commercial Code, which directs that, “The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed” (§ 1-106 [1]) and that, “This Act shall be liberally construed and applied to promote' its underlying purposes and policies” (§ 1-102 [1]). The fact that “tender of delivery” may connote a buyer-seller relationship does not exclude interpretation of the phrase as it relates to a buyer’s cause of action against the manufacturer to" refer to the tender of delivery made by the seller-distributor as the manufacturer’s conduit to the buyer,[5] nor in light of the liberal administration *416 and liberal construction provisions of the Code should it be so limited.
No greater support for the majority’s conclusion is provided by the suggested relationship (majority opn, at p 412) between limitations, the record keeping procedures of modem business and the unpredictable period of exposure that results if the action accmes on sale to the plaintiff. While that apparently was the origin of the four-year period established by UCC 2-725 (1) when it was adopted in 1964 (see, Comment to the original section), strict products liability was not then generally recognized. With our acceptance in Codling v Paglia (supra), of the strict liability concept, however, and our subsequent holding that the three-year tort limitations period accrued from the date of injury (Victorson v Bock Laundry Mach. Co., supra), the unpredictability of the manufacturer’s exposure became for him a way of life and record keeping procedures were no longer sufficiently significant “to dictate the outcome” as to limitations (Victorson v Bock Laundry Mach. Co., 37 NY2d, at p 404, supra). No more so should those considerations determine when a purchaser’s warranty action against a remote manufacturer accrues with respect to the expanded warranty action authorized by the 1975 amendment to UCC 2-318.
The final basis for my disagreement with the majority is that the cases holding that the UCC’s four-year limitation period begins to run in favor of a manufacturer only from the date of the retail sale are more numerous (and those that state reasons more closely reasoned) than those on which the majority rely. Of the latter Doyle v Happy Tumbler Wash-O-Mat (supra), has been discussed above, and Fazio v Ford Motor Corp. (69 AD2d 896) concerned an action brought more than four years after the consumer’s purchase from the retailer and, therefore, is not in point.* ***[6] And while Rosenau v City of New Brunswick (93 NJ Super 49, 224 A2d 689) held that limitations began to run from the time the manufacturer sold a water meter to the city which the city later installed in plaintiff’s home, the case is readily *417 distinguishable for the court was at pains to point out (93 NJ Super, at pp 55-56, 224 A2d, at pp 692-693, supra) that installation in plaintiff’s home was the result of pure happenstance, that the meter was not intended to be resold by the city nor was it advertised in any way, but rather was intended to be installed by the city as part of its own public system. Moreover, the original sale of the meter was in 1942, long before the UCC was enacted, let alone amended, and the court held both implied warranty and strict liability causes of action barred.
There are, in contrast, a number of cases holding timely an action against a manufacturer brought within four years of the consumer’s purchase (Singer v Federated Dept. Stores, 112 Misc 2d 781; Bort v Sears, Roebuck & Co., 58 Misc 2d 889; Berry v Searle & Co., 56 I11 2d 548, 309 NE2d 550; Ouellette v Sturm, Ruger & Co., 466 A2d 478 [Me]; Waldron v Armstrong Rubber Co., 64 Mich App 626, 236 NW2d 722; Gillespie v American Motors Corp., 51 NC App 535, 277 SE2d 100; Redfield v Mead, Johnson & Co., 266 Ore 273,512 P2d 776; Williams v West Penn Power Co., 502 Pa 557, 467 A2d 811; Commercial Truck & Trailer Sales v McCampbell, 580 SW2d 765 [Tenn]; Rapp Co. v Whitlock Equip. Corp., 222 Va 80,279 SE2d 133; Patterson v Her Majesty Indus., 450 F Supp 425; see, McCarthy v Bristol Labs., 61 AD2d 196, on later appeal 86 AD2d 276; Falker v Chrysler Corp., 119 Misc 2d 375). The holding in many of those cases is equivocal in that the decision does not articulate the basis for its conclusion. But the Singer, Bort, Ouellette and Patterson cases are squarely in point and their reasoning (that UCC 1-102 [1] requires courts to construe its provisions liberally [Singer]; that “otherwise the warranties of all manufacturers would be mere paper words with plaintiffs having to prove negligence in every case” [Bort, 58 Misc 2d, at p 890, supra]; “[o]nly when plaintiff came into possession of the gun * * * did he achieve the status of a foreseeable user which could serve as the predicate for the assertion of warranty liability” [Ouellette, 466 A2d, at p 483 (Me)]; the fact that the Legislature in abolishing vertical and horizontal privity sought to protect the ultimate user requires the conclusion that the cause of action accrues when the user receives the product [Patterson]) is for me persuasive.[7] Likewise *418 persuasive though not so directly in point is the similar reasoning of the Redfield and Commercial Truck cases that the statutory warranty action given the consumer should not be narrowly construed.[8]
For the foregoing reasons I would reverse the order of the Appellate Division and reinstate Special Term’s dismissal of the limitations defense.
Chief Judge Wachtler and Judges Kaye and Alexander concur with Judge Simons; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Jasen concurs.
Order affirmed, with costs.

. The 1975 amendment adopted Alternative B, proposed by the Editorial Board of the Uniform Commercial Code in 1966, which was “designed for states * * * that desire to expand the class of beneficiaries” (1A ULA 54, Official Comment 3).

. Jaffee Assoc. v Bilsco Auto Serv. (58 NY2d 993) is not to the contrary for it involved not personal injury but economic loss (see, 89 AD2d 785).

. In view of that construction of “tender of delivery” the majority’s reference to “past usage” (majority opn, at p 412) is difficult to understand.

. Judge Breitel, as he then was, dissenting in Mendel, had called it “all but unthinkable that a person should be time-barred from prosecuting a cause of action before he ever had one” (25 NY2d, at p 346), and Judge Jerome Frank put it even more forcefully in his dissent in Dincher v Marlin Firearms Co. (198 F2d 821, 823): “Except in topsy-turvy land, you can’t die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or bum down a house never built, or miss a train running on a nonexistent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal ‘axiom,’ that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff.”

. Prosser, Law of Torts, at 651 (4th ed): “The middleman is no more than a *416 conduit, a mere mechanical device, through whom the thing sold is to reach the ultimate user”; Kassab v Central Soya (432 Pa 217, 227, 246 A2d 848, 853): “the typical consumer * * * buys from a retail merchant who is usually little more than an economic conduit.”

. Not in point for like reason, though not cited by the majority, are JR ¿vera v Berkeley Super Wash (44 AD2d 316, 326, affd 37 NY2d 395); Reis v Pfizer, Inc. (61 AD2d 777); Weinstein v General Motors Corp. (51 AD2d 335); Johnson v Hockessin Tractor (420 A2d 154 [Del]); Cumberland Val. Joint School Auth. v Halderman, Inc. (23 Pa D&C3d 616); see, Garcia v Texas Instruments (610 SW2d 456 [Tex]); Garvie v Duo-Fast Corp. (711 F2d 47); Quadrini v Sikorsky Aircraft Div. (425 F Supp 81, 505 F Supp 1049).

. Accord, 3A Framer and Friedman, Products Liability § 40.02, at 12-34: “It would seem that the courts which apply the time-of-sale rale will hold that the action accrues when plaintiff purchases the product from the retailer. If a warranty is held to extend to a remote purchaser, which is the effect of abrogating privity, it cannot on principle be breached before the product is purchased by him.”

. It is no answer, as the majority suggests (at p 412), that its interpretation “does not limit available remedies generally” or that this plaintiff waited more than three but less than four years before suing. The issue is not what other remedies might have been available but what the Legislature intended when in 1975 it amended UCC 2-318. That plaintiff may have had other remedies now outlawed furnishes no basis for the majority’s restrictive reading of what the UCC says is to be liberally construed and liberally administered.